**AMERICAN MOTORISTS INSURANCE COMPANY, Plaintiff,**

v.

**CITY WIDE TRANSPORTATION CO., Inc., Walter Greene and Sylvia Greene, Defendants.**

**No. 69 Civ. 1704.**

United States District Court
S. D. New York.

Sept. 15, 1969.

Joseph T. Keller, New York City, for plaintiff.

Mudge, Rose, Guthrie & Alexander, New York City, for defendants; Thomas W. Evans, New York City, of counsel.

## MEMORANDUM

LASKER, District Judge.

Defendants move to amend their answer by filing a counterclaim and for a preliminary injunction ordering plaintiff to furnish performance bonds required under defendants' contracts with the Board of Education. Defendant City Wide Transportation Company, a New York corporation ("City Wide") is engaged in the business of providing bus service primarily for pupils attending the New York public schools (among them physically handicapped, mentally retarded and emotionally disturbed children). Plaintiff, American Motorists Insurance Company ("American"), is a corporation of the State of Illinois whose insurance business includes the furnishing of performance bonds.

In 1968 City Wide was the successful bidder on two three-year contracts with the Board of Education of the City of New York. Prior to bidding on these contracts, City Wide negotiated with American to secure assurances that American would provide performance bonds in the event that City Wide was the successful bidder. As the result of such negotiations, the manager of American's Eastern Bond and Burglary Underwriting Department wrote on April 11, 1968 to the Board of Education advising as follows:

"We, as Surety, on the enclosed Bid Bond fully intend to provide any Performance Bonds required if our principal, The City Wide Transportation Company, should be awarded this contract, being bid upon."

Thereafter, on May 6, 1968, American's manager again wrote on behalf of American Motorists to the Board of Education, stating:

"This letter is in response to your phone call of May 3rd. We understand that the subject company submitted the low bids for several bus contracts for the transportation of school children. As Surety on the Bid Bonds, we are prepared to execute the Performance Bonds as required by the Board of Education in the formal contracts. We understand that such bonds have been required for the first year only of the three-year contracts but that the new contracts may specify bonds covering the entire term. Thus, our obligation as Surety is to guarantee performance of the contracts by our principal.

"I trust that this complies with your request."

City Wide proved to be the successful bidder and entered into the contracts with the Board of Education referred to in the above correspondence. In connection with the execution of the contracts by City Wide and the Board of Education, American furnished one-year performance bonds. In accordance with customary practice, the performance bonds incorporated by reference the terms of the contracts between City Wide and the Board of Education, a relevant portion of which stated:

"The Performance Bond shall be from a surety company licensed to do business in the State of New York guaranteeing the full and faithful performance for the initial first year period of such contract as may be

awarded to him. Thereafter, the contractor shall be required to provide a bond guaranteeing the performance at the beginning of each additional year beyond the operation of the first year of said contract.

"Inability on the part of a contractor to obtain a bond guaranteeing performance as required herein shall be deemed sufficient cause for cancellation of balance of contract."

From January 15, 1969 to February 11, 1969, employees of City Wide struck the company, thereby preventing it during that period from meeting its obligation to provide bus service under its contract with the Board of Education. Upon the conclusion of the strike, City Wide resumed its service to the City uninterruptedly until the end of the 1968–1969 school year.

In the spring of 1969, negotiations took place between City Wide and the Board of Education as to the assessment of damages against City Wide. The matter was settled by City Wide's payment to the Board of Education of $70,000 and a waiver by the Board of Education as to any default by City Wide.

On April 23, 1969, American commenced this suit against City Wide seeking the cancellation of its existing bond with City Wide and for other relief. Prior to the commencement of the new school year, City Wide requested American to furnish a performance bond for the impending school year. Although as recently as August 21, 1969, the office of the Comptroller of the City of New York, on behalf of the Board of Education, wrote to City Wide to advise it "that the City of New York has no claim, nor does it intend to assert a claim, against you or the American Motorists Company under the above numbered bonds in connection with the Board of Education's school bus contracts for services performed by your company during the school year commencing September 1968 and ending June 30, 1969," American has refused to furnish bonds for the current school year on the grounds that by its nonperformance during the period January 15, 1969 to February 11, 1969, City Wide had defaulted on its agreement with the Board of Education, and further, that American had never agreed to furnish a second or third year bond. City Wide thereafter made efforts to secure a performance bond from other surety companies with total lack of success, which it alleges was caused by American's having brought the instant suit against it. As a result, to this date City Wide has not furnished a performance bond for the second year of its contract to the Board of Education. The Board has temporarily waived such requirement, but its waiver is revocable at will and the Board has continued to require City Wide to furnish the bond.

By the terms of the agreement between City Wide and the Board of Education, failure to furnish a performance bond is ground for cancellation of the agreement. City Wide alleges that if its contract with the Board of Education is cancelled, it will lose 90% of its business and it, and codefendants Walter Greene and Sylvia Greene, who are guarantors of the City Wide contract, will be rendered insolvent. It should be noted that last year City Wide transported approximately 48,000 public school students and that it employs between 400 and 450 people.

At the conclusion of the January-February 1969 strike, City Wide entered into a collective bargaining agreement with the Transport Workers Union which includes a no strike clause and runs through the expiration date of the City Wide agreement with the Board of Education.

## I. THE MOTION TO AMEND THE PLEADINGS

American opposes City Wide's motion to amend its pleadings on the ground that the proposed counterclaim is a compulsory counterclaim under Rule 13(a) of the Federal Rules of Civil Procedure, which should have been set forth in defendants' answer of July 18, 1969.

Assuming arguendo that the proposed counterclaim is a compulsory counterclaim under Rule 13(a), as indeed it appears to be, nevertheless Rule 13(f) empowers the court to authorize the filing of such counterclaim by amendment "when a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, * * *."

■ We need not determine whether the proposed counterclaim was omitted from defendants' answer by oversight, inadvertence, or excusable negligence, since in this case it clearly appears that justice requires allowing defendants to set up a counterclaim. As stated in Wendell v. Holland-America Line, 30 F. R.D. 162, 163–164 (S.D.N.Y., 1961, Opinion of Judge Palmieri):

"In contending that the mandatory character of rule 13(a) precludes the court from granting the defendant permission to amend his answer, plaintiff misconceives the effect of that rule. The purpose of the Rules of Civil Procedure governing counterclaims is to avoid multiplicity of suits, not to deprive litigants of their rights. See Fed.R.Civ.P. 15(a) (Leave to amend 'shall be freely given when justice so requires'). Assuming that plaintiff is correct in his assertion that defendant's counterclaim is compulsory, rule 13(a) would bar an independent action by defendant after judgment had been entered, Pennsylvania R. R. v. Musante-Phillips, 42 F. Supp. 340 (N.D.Cal. 1941), but it does not deprive the court of discretion to permit amendment of the answer prior to trial. Plaintiff cites no case to support his position and it is opposed to sound reason. Contrary to plaintiff's contentions, the compulsory nature of a counterclaim should furnish an additional reason for permitting defendant to file an amended answering plea, for a denial of leave to amend would permanently preclude defendant from asserting his claim."

See also Singer Mfg. Co. et al. v. Shepard et al., 13 F.R.D. 509 (S.D.N.Y., 1952).

## II. THE MOTION FOR A PRELIMINARY INJUNCTION

■ The purpose of a preliminary injunction is to preserve or restore the status quo pending final determination of the action after a full hearing. Unicon Management Corp. v. Koppers Co., Inc., 366 F.2d 199, 204 (2d Cir., 1966, Opinion of Chief Judge Lumbard); Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 742 (2d Cir., 1953, Opinion of Judge Frank); 7 Moore's Federal Practice, par. 65.04[1].

As Judge Frank observed in *Hamilton,* supra, a preliminary injunction "serves as an equitable policing measure to prevent the parties from harming one another during the litigation." Id. at 742.

■ The usual prerequisites for the issuance of a preliminary injunction are: (1) a showing of probable ultimate success on the merits by the party seeking the injunction, and (2) possible irreparable injury to that party if the injunction is denied. Symington Wayne Corp. v. Dresser Industries, Inc., 383 F. 2d 840 (2d Cir., 1967); Unicon v. Koppers, supra. As stated by Judge Frank in *Hamilton,* supra, 206 F.2d at 740:

"To justify a temporary injunction it is not necessary that the plaintiff's [1] right to a final decision, after a trial, be absolutely certain, wholly without doubt; if the other elements are present (*i. e.,* the balance of hardships tips decidedly toward plaintiff [1]), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation."

Here the letters between the parties, particularly the letter of May 6, 1968

1. In *Hamilton,* the plaintiff sought the injunction.

from American to the Board of Education stating:

> "We understand that such bonds have been required for the first year only of the three-year contracts but that the new contracts may specify bonds covering the entire term. Thus, our obligation as Surety is to guarantee performance of the contracts by our principal.";

the affidavits submitted on this motion, and the text of the Board of Education contract proposals and contracts give force to City Wide's position, and appear sufficient to meet the requirement for a showing of ultimate probable success on the merits of the case. At the very least, there is need for "a more deliberate investigation."

█ Furthermore, it is unarguable that City Wide will be irreparably harmed if it is denied the protection of a preliminary injunction at this time. Although the Board of Education has granted City Wide a temporary waiver of the requirement to furnish a performance bond, nevertheless that waiver is revocable at the will of the Board and the Board has indicated that it intends to demand the usual bond. Sans bond City Wide's contract with the Board will be cancelled and, however dramatically it may have described the result of that cancellation, it appears perfectly clear that its business will be ruined and its owners quite conceivably rendered insolvent. In this connection it should be noted that in the fiscal year ended July 31, 1969, $3,936,480 of City Wide's "total" income of $4,492,915 was derived from its contracts with the Board of Education.

But there is an additional reason for granting a preliminary injunction in this case. Clearly the public has a great interest in the matter, and, equally certainly, the public interest is a relevant factor in determining whether an injunction should be granted. The rule was stated by then Judge Burger, now Chief Justice Burger, in Liberty Lobby, Inc. v. Pearson, 129 U.S.App.D.C. 74, 390 F.2d 489, 490 (1968):

> "In exercising the discretion to grant or withhold a preliminary injunction, the District Judge must consider the petitioner's prospect of success on the merits and weigh the interests of the parties and the public."

See also Central Louisiana Elec. Co. v. Rural Electrification Admin., 236 F. Supp. 271, 279 (W.D.La., 1964, Opinion of Chief Judge Dawkins).

The school year has already begun. 48,000 pupils are presently being transported by City Wide, including, as indicated above, physically handicapped, mentally retarded and emotionally disturbed children. If the Board of Education rescinds its waiver and City Wide's contracts are cancelled, there is a substantial possibility that those pupils will be greatly inconvenienced and the disadvantaged children may be prevented altogether from going to school. Certainly if City Wide's contracts are cancelled, most or all of its employees will be discharged.

In acknowledging City Wide's potentially irreparable damages, the court does not overlook the risk to American. In view of the strike against City Wide last year, the insurance company is justifiably concerned as to its exposure under a bond. However, the risk to the insurance company if the preliminary injunction is granted is slight in comparison to the risk to City Wide if it is denied. It is relevant in this connection to note that for the remainder of the term of the contracts with the Board, City Wide is now covered by a collective bargaining agreement which includes a no strike clause, and which has been entered into with a union which, so far as the court knows, has observed such no strike provisions during the periods for which its contracts have run. The collective bargaining agreement should greatly lessen the likelihood of City Wide's failure to provide service hereafter, and consequently diminish substantially any risk to American.

The court is not unmindful that the power to issue a mandatory injunction

should be "sparingly exercised." 7 Moore's Federal Practice, par. 65.04[1]. But here the grave and actual risk to the defendants and the potential injury to the public if the injunction is not issued, compared to the contingent and limited risk to the plaintiff if the motion is granted, warrants the relief requested.

For the reasons set forth above, defendants' motion to amend their complaint by adding the counterclaim presented and for a preliminary injunction is granted.

Settle order on notice.