Hyman Korn, J.
Petitioners, sergeants in the New York City Police Department, seek an order pursuant to CPLR 2304 quashing subpoenas and subpoenas duces tecum heretofore served upon them by respondent Commission to Investigate Allegations of Police Corruption, also known as the Knapp Commission.
By separate motion, the Patrolmen’s Benevolent Association, the Sergeants’ Benevolent Association and the New York Civil Liberties Union seek leave to intervene as amicus curiae. Leave to so intervene is granted and the court commends the aforementioned organizations for their interest herein.
In companion motions, Nos. 92, 93, 94 and 268, the movants therein petition for the same relief as is sought by the instant petitioners and in view thereof the determination to be rendered herein will apply to each of the foregoing companion motions.
Respondent Knapp Commission was established on May 21, 1970 pursuant to Executive Order No. 11, and on May 27, 1970 the City Council enacted Local Law 13, conferring upon the commission the power to administer oaths, to issue and enforce subpoenas and to hold hearings.
Executive Order No. 11 provides that the commission is to 1) investigate the extent of alleged police corruption in the city and any relationship of such alleged corruption to crime and law enforcement; 2) inquire into and evaluate the existing procedures for investigating specific allegations of corruption and present practices designed to prevent corruption and ascertain whether these procedures provide the public with adequate assurance that charges of police corruption are dealt with vigorously, promptly and fairly; 3) recommend improvements in these procedures, additional steps to provide stronger safeguards against corruption, and any improvements in methods of law enforcement which will tend to eliminate police corruption.
In connection with an investigation commenced by the commission, the petitioners were served with subpoenas to appear before the commission on November 5, 1970 and to produce “ all records of activity for the period from June 1, 1970 to date, including memorandum books, all papers attached thereto, pads, notebooks, telephone books and telephone pads, and papers attached thereto; all personal and non-personal copies of Federal and New York State tax returns for 1967, 1968 and 1969; *783 all bank statements, bank books, receipts, deposits slips for 1967, 1968 and 1969; and all records of brokerage accounts, deposit slips and statements for 1967, 1968 and 1969.” On the return date of the subpoenas, the petitioners appeared and were granted an adjournment to November 12, 1970 for the purpose of securing counsel. For the record, the petitioners stated their name, address, rank and shield number. No other questions were propounded and the petitioners were given an eight-page financial questionnaire to be completed by the adjourned date.
Prior to the adjourned date, petitioners by order to show cause commenced the instant proceeding to quash the subpoenas and, pending the court’s determination thereof, respondent has temporarily suspended its investigation. The petitioners’ prayer for relief is predicated on the contention that they may be faced with the dilemma of waiving their constitutional privilege against self incrimination or, if not, forfeiting their jobs.
It is well settled that all persons are entitled to the benefits of the Constitution and the United States Supreme Court has heretofore declared that ‘ ‘ policemen, like teachers and lawyers, are not relegated to a watered-down version of constitutional rights” (Garrity v. New Jersey, 385 U. S. 493, 500). “ Petitioners as public employees are entitled, like all other persons, to the benefit of the Constitution including the privilege against self incrimination” (Sanitation Men v. Sanitation Comr., 392 U. S. 280, 284-285). However, it would appear that under the present circumstances of this proceeding, petitioners are not faced with any contemplated violation of their rights.
Under the procedure that respondent states will be followed, petitioners will be advised as follows: “ I want to advise you that you have all the rights and privileges guaranteed by the laws of the State of New York and the Constitution of this State and of the United States, including the right to be represented by counsel at the inquiry, the right to remain silent, although you may be subject to disciplinary action by the Police Department for the failure to answer material and relevant questions relating to the performance of your duties as an employee of the City of New York.”
In addition, respondent states that petitioners will be advised that any answer they give will not be used against them in a criminal proceeding.
At the outset, respondent appears to have overcome that which the Supreme Court found objectionable in Sanitation Men (supra), to wit, the threatened use of the automatic firing provision of section 1123 of the City Charter should the public employee exercise his Fifth Amendment privilege.
*784 In the instant case, petitioners are not so threatened. There is no question that a public employee may be disciplined, even discharged, in the event he fails to account with respect to the performance of his duties (Sanitation Men v. Sanitation Comr., supra).
Respondent’s intention to advise petitioners of the possible effect of their refusal to testify is no more than an attempt to fairly inform these public employees so that they may intelligently determine whether or not they should take their constitutional privilege. Obviously, petitioners’ counsel have similarly and no doubt more forcefully advised these officers as to what effect their refusal to co-operate in the inquiry might have on their continued employment.
It should be noted that the commission is attempting to follow the method with respect to questioning of public employees as witnesses, which procedure was sustained in Uniformed Sanitation Men Assn. v. Comr. (426 F. 2d 619). In that case the sanitation men originally ordered reinstated by the United States Supreme Court in Sanitation Men (392 U. S. 280, supra), were again questioned at a departmental hearing and, upon their refusal to answer, were discharged; The Circuit Court sustained their dismissal. In this latest case, as in the instant one, no attempt was made to extract a waiver of immunity from the employee, nor did the investigating body seek to compel testimony under threat of contempt.
Further objection is made to this proceeding on the ground that respondent cannot offer petitioners complete transactional immunity and that without such immunity they cannot be compelled to answer. To begin with, respondent has stated that it does not intend to compel petitioners to testify. The commission counsel has averred in his affidavit that should a subpoenaed officer exercise his privilege against self incrimination, no contempt proceedings will be commenced to compel him to testify.
As distinguished from Matter of Ruskin (Engelhardt) (N. Y. L. J., Oct. 1,1970, p. 2, col. 5) no attempt is being made in the instant case to overcome the claim of privilege by a grant of immunity. Since petitioners may thus freely exercise their right under the Fifth Amendment and refuse to testify, their concern with the extent of immunity respondent may or may not be able to grant them is legally irrelevant. Further, it should be noted the Circuit Court, in the second Uniformed Sanitation Men case, held that the questioned employee did in fact obtain adequate immunity as a result of his being called to testify.
*785 In view of the foregoing, it appears that at the present stage of these proceedings the personal subpoenas issued by respondent are not violative of petitioners’ rights.
There is one further objection to petitioners’ application. No questions have been actually propounded and to the extent that petitioners seek a determination in advance with respect to a future claimed violation of their constitutional rights, their application is premature (People v. Laino, 10 N Y 2d 161, cert. den. 374 U. S. 104).
Furthermore, it is quite possible that no incriminatory questions will be asked and, thus, petitioners conceivably may never be faced with the dilemma they seek to avert.
Accordingly, that branch of the motion which seeks to quash the subpoenas as violative of petitioners ’ constitutional rights is denied, without prejudice to renewal in the event same becomes necessary.
As heretofore stated, petitioners were also directed to complete an eight-page financial questionnaire. From an examination thereof, it would seem that, in order to properly complete same, one would require the attendance of an accountant on a constant around-the-clock basis. Particularly oppressive, unnecessarily burdensome and, in several instances, totally irrelevant, is Schedule A of the questionnaire. This schedule contains almost 50 items and seeks the exact amounts expended for the past 3 years by the witness, his wife, his dependents and for all others in whose behalf expenditures were made for such items as recreation, gas and oil, automobile tires, gifts, hobbies, tobacco, newspapers, carfare, liquor, cosmetics, laundry and tailor. While it may be perfectly proper to inquire into such matters as general living expenses, the minute particularization sought herein is completely unnecessary and bears no direct relation to the purpose for which the respondent commission was set up; as, for example, while a large laundry bill might be indicative of an aversion toward home laundering or of a penchant for cleanliness, it would have no bearing on whether corruption exists. Similarly, a large outlay of carfare could be merely indicative of a dislike of walking, a not unusual circumstance in the case of a foot patrolman. The amount thus expended bears no relation to the commission’s legitimate aims. Of no significance whatsoever can there be the amount spent for cosmetics, newspapers, tobacco or automobile tires. Furthermore, in order to comply with the hairsplitting details of the questionnaire it would be necessary for *786 one to be constantly armed with a ledger into which would have to be immediately recorded and properly indexed all expenditures.
It is elementary that information sought to be elicited must bear a reasonable relation to the subject matter into which inquiry is being made and it follows that the power to investigate does not permit unlimited and unrestrained investigation into the private affairs of citizens. “ The powers of all inquisitional bodies * * * are subject to the limitation that their power is to be exercised, not as an end in itself ”. (Matter of Ellis, 176 Misc. 887, 891.) In view of the absence of any showing by respondent that the items embraced in the financial questionnaire are relevant to its inquiry, that branch of the motion which seeks to vacate the questionnaire is granted with leave to the respondent to formulate a new and proper questionnaire.
The remaining branch of petitioners’ motion seeks to quash certain subpoenas duces tecum. The said subpoenas require the production of memorandum books and all papers attached thereto, pads, notebooks, telephone books and telephone pads and papers attached thereto, together with copies of tax returns, bank statements, etc. and records of brokerage accounts. With respect to the memorandum books and the papers attached thereto, it is undisputed that these items constitute official records made in the regular course of police business and, since the petitioners are merely the custodians of such records, no privilege attaches thereto.
That portion of the subpoenas which seeks the production of tax returns, bank statements, etc. and records of brokerage accounts bears a reasonable relation to the purposes for which the respondent commission was created and no valid ground has been demonstrated by petitioners to warrant the vacatur of this branch of the subpoena.
The remainder of the subpoenas refers to ‘ ‘ pads, notebooks, telephone books and telephone pads and papers attached thereto.” These records are not sufficiently particularized and in view thereof no proper determination as to their relevance or competence can be made at this time. Accordingly, the subpoenas are vacated to the extent of deleting therefrom the above-quoted section with leave, however, to respondent to serve amended subpoenas duces tecum designating with greater particularity than heretofore employed the nature of the 11 pads, notebooks, telephone books, etc.” sought to be produced.