Richard BOWES et al., Plaintiffs,

v.

The COMMISSION TO INVESTIGATE ALLEGATIONS OF POLICE CORRUPTION AND the CITY'S ANTI–CORRUPTION PROCEDURES et al., Defendants.

No. 71 Civ. 1933.

United States District Court, S. D. New York.

May 14, 1971.

Jay Gold, New York City, for plaintiffs.

J. Lee Rankin, Corp. Counsel, New York City, for defendants; Yvette Harmon, Asst. Corp. Counsel, of counsel.

## MEMORANDUM

TENNEY, District Judge.

By order to show cause dated April 30, 1971, plaintiffs, four sergeants with the New York City Police Department, move pursuant to Fed.R.Civ.P. 65(a) to enjoin defendants, the Commission to Investigate Allegations of Police Cor-

ruption and the City's Anti-Corruption Procedures (hereinafter referred to as the "Commission") and its individual members, from attempting to compel the appearance or testimony of plaintiffs pursuant to subpoenas *ad testificandum* served November 3, 1970, or from attempting to compel the production of certain documents specified in subpoenas *duces tecum* served the same day.

This action comes before me after a brief history in the New York state courts where movants, after being served with the subpoenas, instituted actions to quash them. In its opinion, the New York State Supreme Court held that the mere issuance of the subpoenas did not violate plaintiffs' rights, but the subpoenas *duces tecum* were vacated in part as not being sufficiently particular in scope.[1] To the extent the subpoenas were not vacated, the court ruled that the documents sought were either official documents of which the sergeants were mere custodians, or the material was relevant to the Commission's purpose. The state court, however, apparently did not rule on the merits of the crucial issue presently before the Court —that since plaintiffs may be subject to job forfeitures under Section 1123 of the New York City Charter for asserting their privilege against self-incrimination, with respect to questions relating to their official duties as policemen the subpoenas constitute an attempt to coerce them, under threat of job loss, into relinquishing their Fifth Amendment rights against self-incrimination. Rather, the state court concluded, as I do here, that the action is premature since "it is quite possible that no incriminating statements will be asked, and, thus, petitioners conceivably may never be faced with the dilemma they seek to avert."[2] The court then denied the motions to quash the subpoenas, *without prejudice to renewal in the event it became necessary*. This decision was affirmed with-out opinion by both the Appellate Division and the Court of Appeals for New York.

The thrust of plaintiffs' position is that if required to appear before the Commission, which they contend is acting as prosecutor and not as employer, they must either testify or assert their privileges against self-incrimination. If they assert their privileges, they contend that the Police Department may discharge them although they will have invoked the privilege in proceedings wherein the City appeared not as an employer but rather as a prosecutor. Recent decisions of the Supreme Court suggest that this fear is unfounded. Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L. Ed.2d 1082 (1968); Uniformed Sanitation Men Ass'n Inc. v. Com'r of Sanitation, 392 U.S. 280, 88 S.Ct. 1917, 20 L. Ed.2d 1089 (1968); Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L. Ed.2d 562 (1967). On the other hand, movants argue that if they waive their privilege against self-incrimination and testify before this allegedly prosecutorial body, they may be subject to criminal prosecution for the activities about which they testify, even though that testimony and its fruits will not be used (*e. g.*, they are granted "use immunity"). They further argue that since they are being coerced in a "criminal" investigation by threat of job loss to waive their rights, they must be given immunity co-extensive with their Fifth Amendment privileges from all prosecution (either federal or state) for the activities about which they testify ("transactional immunity"). Garrity v. New Jersey, *supra*; Murphy v. Waterfront Commission of New York Harbor, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964); In re Kinoy, 326 F.Supp. 407 (S.D.N.Y., Jan. 29, 1971). Movants recognize, however, that if the Commission is merely acting as their employer and they refuse to answer specific and

---

1. Fahy v. Commission to Investigate Allegations of Police Corruption, 319 N.Y.S. 2d 242 (Feb. 5, 1971).

2. *Id.* at 6.

narrow questions relating to performance of official duties after being given "use immunity", they would be subject to discharge. Gardner v. Broderick, *supra*, 392 U.S. at 278, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (dicta); Uniformed Sanitation Men Ass'n Inc. v. Com'r of Sanitation, *supra*, 392 U.S. at 284, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (dicta); Uniformed Sanitation Men Ass'n Inc. v. Commissioner of Sanitation, 426 F.2d 619, 626 (2d Cir. 1970); Silverio v. Municipal Court, 355 Mass. 623, 247 N.E.2d 379, 384 (1969). Moreover, if the sergeants testify under a grant of "use immunity", they may nevertheless be discharged if their testimony indicates they are not performing their official duties as required.

█ Plaintiffs take too narrow a view of when the City is acting as their employer by urging that only when the Police Commissioner or other official in that Department conducts the inquiry is the questioning by their employer. It would appear, however, that where the number of employees is large and objectivity is particularly important, the City, in its capacity as sovereign and employer, is entitled to appoint a commission to conduct an inquiry. Plaintiffs contend that the instant Commission, however, is clearly serving as prosecutor since the information received by it *may* be transmitted to the United States Attorney for this District, and since its inquiry is specifically directed at corruption which is also a crime. It seems clear, however, that inquiry into this issue is perfectly consistent with the City's acting as employer.[3] Moreover, the Commission itself denies having the power to commence criminal prosecutions or discharge any employees, and states that it will not attempt to punish for contempt any officer who, in good faith, invokes his privilege. Any discharges or criminal prosecutions, therefore, can only be initiated by the appropriate depart-

ment of the government, over which the Commission has no power. Certainly the Commission's turning over information that it receives to these departments is consistent with both its role as appointee of the employer and with the "use immunity" to which the employees are entitled. Since it appears extremely unlikely that movants will succeed on the merits of the instant action, no preliminary injunction will issue herein. American Motorists Ins. Co. v. City Wide Transp. Co., 308 F.Supp. 1080, 1083 (S. D.N.Y.1969).

█ It further appears that this Court lacks jurisdiction, since (a) the Commission has not yet asked any questions; (b) the questions to be asked are not specified; (c) plaintiffs have neither testified nor invoked their privileges and refused to testify; and (d) no action to either prosecute or discharge movants has been taken. If and when such events occur, doubtless the various Supreme Court cases heretofore cited will be dispositive of the matter. However, at this stage the Court need not, and indeed cannot, reach the merits of this action.

Article III of the Constitution specifically limits the jurisdiction of the federal courts to actual "cases and controversies". Plaintiffs, however, are clearly seeking an advisory opinion of this Court as to whether, under various possible fact situations, the Commission might deprive them of their constitutional rights. Golden v. Zwickler, 394 U.S. 103, 110, 89 S.Ct. 956, 22 L.Ed.2d 113 (1964). "[T]he facts of their personal interest in their civil rights, of the general threat of possible interference with those rights by the * * * [Commission], if specified things are done by * * * [plaintiffs], does not make a justiciable case or controversy." United Public Workers of America v. Mitchell, 330 U.S. 75, 89, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947). In the instant action,

---

3. Since the Commission has asked these officers no questions, it has not been established what the function of the Commission ultimately is. Possibly after plaintiffs testify or refuse to testify, and

the City attempts to act on the basis of plaintiffs' actions before the Commission, a clearer picture of the position of the Commission will exist.

since it does not appear that the Commission can interfere with the rights of movants, and the actions of the plaintiffs are not specified, there seems to be less basis for a federal court to intervene than existed in *United Public Workers, supra.* "The power of courts, * * to pass upon the constitutionality of acts of * * * [government] arises only when the interests of litigants require the use of this judicial authority for their protection against actual interference. A hypothetical threat is not enough. We can only speculate as to the kinds of * * * activity the * * * [plaintiffs] desire to engage in or as to the contents of their proposed * * * statements * * *." United Public Workers v. Mitchell, *supra* at 89–90, 67 S.Ct. at 564.

In In re Citroen, 267 F.2d 915 (2d Cir. 1959), a case factually similar to the instant action, the Court of Appeals specifically held that the district court was without jurisdiction since no case or controversy had been presented. The Court specifically noted: "The motion is premature. No question has yet been put to the witness. When he is questioned, he may or may not claim the privilege against self-incrimination. If he claims it, the * * * [Commission] may or may not offer him immunity. His motion assumes that he will claim his privilege and that they will then offer immunity. What his motion asks the court to do is to render an advisory opinion as to the scope of the immunity protection * * *, if immunity is hereafter offered him, and as to the constitutionality of such a grant of immunity. The court * * * [lacks] jurisdiction to render an advisory opinion." In re Citroen, *supra* at 915–916.

There are situations where future threatened conduct does rise to the level of an actual controversy, especially if the threat itself infringes on the rights of the plaintiffs, as where a chilling effect on the precious freedom of expression may occur. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). However, there have been no allegations that this exists herein. This Court must assume that the Commission and the state courts will observe plaintiffs' constitutional rights, and "the mere possibility of erroneous initial application of constitutional standards will usually not amount to the irreparable injury necessary to justify a disruption of orderly state proceedings." Dombrowski v. Pfister, *supra* at 484–485, 85 S.Ct. at 1120. Movants have been assured by the state court that in the event their rights are actually infringed it will act. Until that event occurs and the state court refuses to act, I see no reason for this Court to intervene.

Since any actual infringement of the rights of these four police officers can only occur after some action has been taken, *i. e.,* the officers either testify or refuse to testify, and the City thereafter either seeks to discharge them and/or prosecute them, this Court is presently without jurisdiction over plaintiffs' complaint.

Accordingly, and for the foregoing reasons, plaintiffs' motion for a preliminary injunction is hereby denied and the within action dismissed.

So ordered.