Hyman Korn, J.
Motion Nos. 288, 292, 303 and 304 of December 23,1974 are consolidated for disposition.
This is an application by the Temporary State Commission on Living Costs and the Economy to compel these respondents to comply with its subpoenas duly issued pursuant to CPLR 2308 (subd. [b]). Respondents Bernard Bergman, Amram Kass and Anne Weiss move to quash the subpoena duces tecum issued by petitioner upon the National Bank of North America and American Bank and Trust Company for the bank records of these parties, while respondent Sigety cross-moves for an order quashing the subpoena issued upon him. In addition, upon the granting of petitioner’s application to consolidate a prior *449 motion brought by Abraham C. Grossman in Supreme Court, Kings County, to quash the subpoena issued upon Williams-bridge Manor Nursing Home (respondent herein) with these motions, this motion shall also be considered herein (decision, Beckineela, J., Jan. 7, 1975).
The first ground raised in this opposition is that the subpoenas duly issued ¡were invalid as being improperly served for diverse reasons, depending upon the individual circumstance of the party objecting. Unquestionably these subpoenas, ad testificandum and duces tecum, must be served upon the parties who are called to testify personally, and bring the books and records, pursuant to subdivision ¡2 of section 78 of the Civil Bights Law. In the case of the Bergman respondents, personal service was concededly not accomplished, but substituted service was attempted by petitioner pursuant to CPLB 308 (subd. 2). However, inasmuch as a subpoena is to be served like a summons (UPLB 2303), this service fails, because there is no showing that the named respondents purportedly served were residing in the State when service was attempted, pursuant to the CPLB 308 (.subd. 2). (Beach v. Lost Mountain Manor, 53 Misc 2d 563.) Moreover, the two or three days given these respondents to appear from the time these subpoenas were purportedly served, especially where they were required to produce the voluminous records called for, was not sufficient (CPLB 308, subd. 2; Practice Commentaries, McKinney’s Cons. Laws of N. Y., Book 7B, § .2303, p. 20.6). Moreover, for substituted service to be valid, there must be a showing that there was “ due diligence” in attempting personal service, and in the cases where only two or three attempts were made within a ‘1 thirteen hour period” such due diligence is clearly not shown (2A Weinstein-Kom-Miller, N. Y. Civ. Prae., par. 2303.03, n. 7b).
•Service attempted upon the various named respondents that are nursing home partnerships was also defective, inasmuch as the affidavits of service show that the papers were served upon so-called 1 ‘ managing agents ’ ’ and not upon one of the partners, contrary to the requirements of .CPLB 310. (Italian Colony Rest. v. Wershals, 45 A D 2d 841.) Petitioner’s contentions that these respondents by their limited apearance herein waived their jurisdictional objections, or that they are estopped from raising these objections because they failed initially to request withdrawal of the subpoenas (CPLB 2304) is unfounded. A limited appearance for purposes of opposing petitioner’s motion does not constitute a waiver of jurisdictional objections just as an appearance in a motion to dismiss a complaint by serving a responsive *450 pleading does not constitute a waiver of jurisdictional objection that the summons anid complaint were improperly served (CPLR 3211 et seg.). It is also apparent that oral objections to these subpoenas were made by the various attorneys of respondents after they were issued sufficient to constitute the necessary request for withdrawal (see Practice Commentaries, McKinney’s Cons. Laws of N. Y., Book 7B, § 2304, p. 219). In any event a party need only make the request as a precondition to making the motion to quash and not as a precondition to opposing an application to compel as was attempted here in many cases. That section was not intended to confer jurisdiction upon an administrative body to compel compliance with subpoenas issued but defectively served merely where there was lacking a formal request to withdraw them.' In this regard it is apparent that where motions to quash were made, there were such requests.
Thus, for these reasons alone, petitioner’s motion to compel compliance therewith would have to be denied while granting leave to renew upon proper service as herein indicated.
However much more serious questions are raised by respondent’s contentions in objecting to these subpoenas, to wit, that petitioner lacks the jurisdiction to conduct this investigation of respondents’ businesses; that these subpoenas are too broad and sweeping as to the records they seek and are designed to encroach upon the rights of respondents without a necessary showing of their justification as relevant to the matters under inquiry, and because the prior conduct of the commission’s chairman, Mr. Stein, constituting violations of subdivision 8 of section 73 of the Civil Rights Law (code of fair procedure for investigating agencies) in that he unilaterally leaked to the news media information adduced from the hearings held without the requisite consent of the other commission members. Objection is also raised to the calling for voluminous books and records without first attempting to obtain these records that are allegedly on file with other iState agencies, contrary to the mandates of section 6 of the enabling act (L. 1973, ch. 1053, § 6). These objections taken as a whole are tantamount to the singular objection that these subpoenas are unreasonable, oppressive, and in the context of the underlying investigation constitute harassment of these respondents and are violative of their constitutional rights against unreasonable search and seizure and due process (TJ. S. Const., 4th Arndt., 5th Arndt.; 1ST. Y. Const., art. I, §§ 6, 12; 2A Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 2304.13).
The enabling legislation creating this commission states in essence that it is to investigate and report (to the Governor and *451 Legislature) on all matters relating to the rising costs of living, and more specifically ‘ ‘ the spiralling cost of consumer commodities and services ’ ’ (L. 1973, ch. 1053, § 1, subd. e; emphasis added). It is also empowered to make “ recommendations for methods to supplement existing state mechanisms for receiving, investigating and satisfying complaints from the public and from agencies of the state and its political subdivisions relating to price * * * increases ”. (L. 1973, ch. 1053, § 4, subd. a.) The statement of the Legislature in support of the bill, reads in pertinent part: “ The proposed Temporary State Commission on Living Costs and the Economy is designed to help coordinate and enlarge the scope and effectiveness of existing State efforts on behalf of consumers, industry and local governments, all victims of the inflation and energy crises, in this regard. The commission would have broad powers to investigate the causes of these conditions, whether local, State or national, and to make recommendations for relieving their onerous impact on New Yorkers. ” (McKinney’s Session Laws of 1973, p. 2300.)
Thus, it is apparent that the commission is given broad powers under its enabling act to investigate the causes and conditions, and to make recommendations for the means to alleviate these problems, which include the problems of “ consumer services ” costs (L. 1973, ch. 1053, § 1, subd. e). There can be no doubt, according to the ordinary and plain meaning1 of the statutory language, that nursing homes are ‘ ‘ consumer .services ’ ’ and therefore within the purview of the act and jurisdiction of the commission to investigate. The short statement of the subject of the investigation contained in these subpoenas is clearly within the jurisdiction of the commission, i.e. “the cost of Nursing Home Care to the State of New York and the Public ”, and it has been held that such a statement is sufficient to comply with subdivision 2 of .section 73 of the Civil Bights Law (Matter of Ryan v. Temporary State Comm. of Investigation, 33 Misc 2d 1094, revd. on other grounds 16 A D 2d 1022, affd. 12 N Y 2d 708; Matter of Pennock v. Lane, 18 A D 2d 1043).
However, a finding of jurisdictional power to conduct this investigation does not mean that the commission has unlimited power to issue these subpoenas and obtain voluminous business records of respondents, as are apparently called for therein (e.g., all Internal Bevenue ¡Service forms W-2’s 1099’s, and other proof of income, all contracts, leases and other agreements wherein respondents received compensation or consideration). While respondents have the burden of proof to challenge the propriety of subpoena (Matter of Dairymen’s League Co-op. *452 Assn. v. Murtagh, 274 App. Div. 591), where the subpoenas are broad and sweeping, there must be some showing upon petitioner’s part that the documents sought bear some reasonable relationship to the matters under inquiry. The affidavit of the commission chairman is totally insufficient in this regard, in that he merely cites the enabling legislation for his authority, without a factual basis justifying these subpoenas and the records sought therein (Myerson v. Lentini Bros. Moving S Stor. Co., 33 N Y 2d 250; Liberty Mut. Ins. Co. v. City of New York Comm. on Human Rights, 31 N Y 2d 1044; Carlisle v. Bennett, 268 N. Y. 212; Matter of A’Hearn v. Committee on Unlawful Practice of Law of N. Y. City’s Lawyer’s Assn., 23 N Y 2d 916, 918). No agency of government has unbridled discretion to investigate ■any person merely upon the supposition that there may exist possible violations of law without some factual basis in support thereof and without a showing of authority, relevancy and some ■basis for inquisitional action. (Carlisle v. Bennett, supra; Matter of A’Hearn, supra.) To allow the issuance of such broad ■ and sweeping subpoenas without such preliminary showing might too easily subject innocent parties to administrative abuses in violation of their rights to privacy and due process, and would amount to a roving* cause of inquiry that is both burdensome and oppressive (Matter of Horn Constr. Co. v. Fraiman, 34 A D 2d 131, 133; Dunham v. Ottinger, 243 N. Y. 423, 433).
Moreover, there is in the record strong evidence to bolster the contention made by respondents that indeed this investigation is not a proper inquiry limited to the jurisdictional authority ■of the commission to investigate prices and living* costs, but rather appears to be in the nature of an inquiry designed to investigate criminal acts and abuses by respondents for purposes of building a criminal case.
Thus it has been shown by transcripts of news media releases that Commissioner Stein has made numerous statements to the media based upon information adduced at the hearing, without prior consent of the majority of the members of the commission, in violation of subdivision 8 of section 73 of the Civil Rights Law, which states in pertinent part: “ Except in the course of a subsequent hearing open to the public, no testimony or other evidence adduced at a private hearing or preliminary conference or interview before a committee or other multi-member investigating agency shall be disseminated or made available to the public by any member of the agency, its counsel or employees, except with the approval of a majority of the mem *453 hers of such agency. Any person who violates the provisions of this subdivision shall be .guilty of a misdemeanor.” (Emphasis added.)
No such allegation is made by petitioner that 'Commissioner Stein had received such approval, yet the record is ample and undisputed that wholesale dissemination has taken place. While normally the propriety of an investigation cannot he determined in the context of whether individual constitutional rights are being violated until the hearing takes place (Fahy v. Commission to Investigate Allegations of Police Corruption, 65 Misc 2d 781), in view of the great potential danger that this inquiry is in reality a roving course inquiry to uncover criminal acts and other abuses as shown by the wholesale dissemination by Mr. Stein accusing respondents of various crimes, the subpoenas bear greater scrutiny as to their relevance to a proper inquiry. Thus, where subpoenas are issued pursuant to an investigation whose sole purpose is to uncover criminal acts in preparation or in aid of a criminal prosecution, not within the purview of its jurisdictional powers, the subpoena will be quashed (Matter of Grand Jury Proceedings, 486 F. 2d 85, 91; Branzburg v. Hayes, 408 U. S. 665; Boren v. Tucker, 239 F. 2d 767, 772). Where the investigation has been converted from its original lawful purpose of investigating living costs to one ofi another purpose, i.e., to conduct an investigation to find criminal acts, the abuse of process would be sufficiently clear to warrant quashing these subpoenas. (Matter of Quinn v. Lane, 36 Misc 2d 2.)
In addition, where there has been no showing by petitioner that other State agencies and subdivisions were utilized in gaining access to at least some of these documents where they are undisputedly matters of public record, there has been a violation of mandating provisions of the enabling act (L. 1974, ch. 1053, § 6) which prima facie indicates an abuse of process against these respondents.
While the court does not .find as a matter of law that the afore-stated abuses in every respect have been committed, where there is sufficient doubt as to the propriety of these subpoenas as herein delineated, upon a motion to compel compliance these doubts must be resolved in favor of respondents, at least until a stronger showing has been made in accordance with this decision (Matter of Branbeyer, 62 N. Y. S. 2d 47).
This determination does not pass upon the issue of whether such abuses exist which warrant a thorough investigation in the public interest. Certainly if there do exist abuses and crimi *454 nal acts, then such an investigation is warranted, and the court is not unaware that these investigations are imminent. However, upon finding the above deficiencies in both the substance and procedures in the service of these subpoenas as herein delineated, this court is constrained by the afore-stated principles of law to act in the manner herein set forth.
Accordingly, the motion by petitioner to compel compliance with its subpoenas is denied, and the cross motions to quash are granted, with leave given petitioner to reserve .subpoenas properly in accordance with this decision.