## UNIFORMED SANITATION MEN ASSN., INC., ET AL. *v.* COMMISSIONER OF SANITATION OF THE CITY OF NEW YORK ET AL.

No. 823.   Argued May 1, 1968.—Decided June 10, 1968.

*Leonard B. Boudin* argued the cause for petitioners. With him on the briefs was *Victor Rabinowitz.*

*Norman Redlich* argued the cause for respondents. With him on the brief were *J. Lee Rankin* and *John J. Loflin.*

MR. JUSTICE FORTAS delivered the opinion of the Court.

The individual petitioners are 15 employees of the Department of Sanitation of New York City. Claiming they were wrongfully dismissed from employment in violation of their rights under the United States Constitution, they commenced this action for declaratory judgment and injunctive relief in the United States District Court for the Southern District of New York. That court dismissed the action and the Court of Appeals for the Second Circuit affirmed. 383 F. 2d 364 (1967). We granted certiorari. 390 U. S. 919 (1968).

Sometime in 1966, the Commissioner of Investigation of New York City[1] began an investigation of charges that employees of the Department of Sanitation were not charging private cartmen proper fees for use of certain city facilities and were diverting to themselves the proceeds of fees that they did charge. The Commissioner obtained an order from the Supreme Court in New York County authorizing him to tap a telephone leased by the Department of Sanitation for the transaction of official business at the city facilities in question.[2]

In November 1966 each of the petitioners was summoned before the Commissioner. Each was advised that, in accordance with § 1123 of the New York City Charter,

---

[1] Section 803, subd. 2, of the New York City Charter provides that the Commissioner "[i]s authorized and empowered to make any study or investigation which in his opinion may be in the best interests of the city, including but not limited to investigations of the affairs, functions, accounts, methods, personnel or efficiency of any agency."

[2] This order was pursuant to § 813–a of the Code of Criminal Procedure of New York. See *Berger* v. *New York,* 388 U. S. 41 (1967).

if he refused to testify with respect to his official conduct or that of any other city employee on the grounds of self-incrimination, his employment and eligibility for other city employment would terminate.[3]

Twelve of the petitioners, asserting the constitutional privilege against self-incrimination, refused to testify. After a disciplinary hearing held pursuant to § 75 of the New York Civil Service Law, they were dismissed by the Commissioner of Sanitation on the explicit ground provided by § 1123 of the City Charter that they had refused to testify.

Three of the petitioners answered the questions put to them, denying the charges made. They were thereafter suspended by the Commissioner of Sanitation on the basis of "information received from the Commissioner of Investigation concerning irregularities arising out of [their] employment in the Department of Sanitation." Subsequently, they were summoned before a grand jury and asked to sign waivers of immunity. They refused. Administrative hearings were held pursuant to § 75 of the Civil Service Law, and they were dismissed from employment on the sole ground that they had

---

[3] Section 1123 of the New York City Charter provides:

"If any councilman or other officer or employee of the city shall, after lawful notice or process, wilfully refuse or fail to appear before any court or judge, any legislative committee, or any officer, board or body authorized to conduct any hearing or inquiry, or having appeared shall refuse to testify or to answer any question regarding the property, government or affairs of the city or of any county included within its territorial limits, or regarding the nomination, election, appointment or official conduct of any officer or employee of the city or of any such county, on the ground that his answer would tend to incriminate him, or shall refuse to waive immunity from prosecution on account of any such matter in relation to which he may be asked to testify upon any such hearing or inquiry, his term or tenure of office or employment shall terminate and such office or employment shall be vacant, and he shall not be eligible to election or appointment to any office or employment under the city or any agency."

violated § 1123 of the City Charter by refusing to sign waivers of immunity. We consider only the dismissal, rather than the suspension, of these petitioners.

Relying upon the decision of the New York Court of Appeals in *Gardner* v. *Broderick,* 20 N. Y. 2d 227, 229 N. E. 2d 184 (1967) (reversed this day, *ante,* p. 273), the Court of Appeals for the Second Circuit held that the dismissal of petitioners did not offend the Federal Constitution. For the reasons which we elaborate in our opinion reversing the New York court's decision in *Gardner* v. *Broderick, supra,* we hold that the Court of Appeals erred.

Petitioners were not discharged merely for refusal to account for their conduct as employees of the city. They were dismissed for invoking and refusing to waive their constitutional right against self-incrimination. They were discharged for refusal to expose themselves to criminal prosecution based on testimony which they would give under compulsion, despite their constitutional privilege. Three were asked to sign waivers of immunity before the grand jury. Twelve were told that their answers to questions put to them by the Commissioner of Investigation could be used against them in subsequent proceedings,[4] and were discharged for refusal to

---

[4] The Commissioner said:

"Mr. [name of witness], this is a private hearing being conducted by the Department of Investigation of the City of New York, pursuant to Chapter 34, of the New York City Charter. The investigation in which you are about to testify relates particularly to the affairs, functions, accounts, methods, personnel and efficiency of the Department of Sanitation of the City of New York. I wish to advise you that you have all the rights and privileges guaranteed by the laws of the State of New York and the Constitutions of this State and of the United States, including the right to remain silent and the right not to be compelled to be a witness against yourself. *I wish further to advise you that anything you say can be used against you in a court of law.* You have the right to have an attorney present

answer the questions on this basis. *Garrity* v. *New Jersey,* 385 U. S. 493 (1967), in which we held that testimony compelled by threat of dismissal from employment could not be used in a criminal prosecution of the witness, had not been decided when these 12 petitioners were put to their hazardous choice. In any event, we need not decide whether these petitioners would have effectively waived this constitutional protection if they had testified following the warning that their testimony could be used against them. They were entitled to remain silent because it was clear that New York was seeking, not merely an accounting of their use or abuse of their public trust, but testimony from their own lips which, despite the constitutional prohibition, could be used to prosecute them criminally.[5]

As we stated in *Gardner* v. *Broderick, supra,* if New York had demanded that petitioners answer questions specifically, directly, and narrowly relating to the performance of their official duties on pain of dismissal from public employment without requiring relinquishment of the benefits of the constitutional privilege, and if they had refused to do so, this case would be entirely different. In such a case, the employee's right to immunity as a result of his compelled testimony would not be at stake. But here the precise and plain impact of the proceedings against petitioners as well as of § 1123 of the New York Charter was to present them with a choice between surrendering their constitutional rights or their jobs. Petitioners as public employees are entitled, like all other persons, to the benefit of the Con-

at this hearing, if you wish, and I understand that you are represented by counsel in the person of [name of attorney], is that correct?" (Emphasis added.)

[5] As we noted in *Gardner* v. *Broderick, supra,* at 278–279, the possible ineffectiveness of this waiver does not change the fact that the State attempted to force petitioners, upon penalty of loss of employment, to relinquish a right guaranteed them by the Constitution.

stitution, including the privilege against self-incrimination. *Gardner* v. *Broderick, supra; Garrity* v. *New Jersey, supra.* Cf. *Murphy* v. *Waterfront Commission,* 378 U. S. 52, at 79 (1964). At the same time, petitioners, being public employees, subject themselves to dismissal if they refuse to account for their performance of their public trust, after proper proceedings, which do not involve an attempt to coerce them to relinquish their constitutional rights.

Accordingly, the judgment is reversed.[6]

*Reversed.*

MR. JUSTICE BLACK concurs in the result.

MR. JUSTICE HARLAN, whom MR. JUSTICE STEWART joins, concurring in the result.[*]

Given in combination the decisions in *Spevack* v. *Klein,* 385 U. S. 511, and *Garrity* v. *New Jersey,* 385 U. S. 493, I can find no solidly acceptable course for me to take in these cases other than to concur in the judgments rendered by the Court. I do so with a good deal less reluctance than would otherwise have been the case because, despite the distinctions which are sought to be drawn between these two cases, on the one hand, and *Spevack* and *Garrity,* on the other, I find in these opinions a procedural formula whereby, for example, public officials may now be discharged and lawyers disciplined for refusing to divulge to appropriate authority information pertinent to the faithful performance of their offices. I add only that this is a welcome breakthrough in what *Spevack* and *Garrity* might otherwise have been thought to portend.

---

[6] In view of our disposition of the case, we do not reach the issues raised by petitioners with respect to the wiretap.

[*]This opinion applies also to No. 635, *Gardner* v. *Broderick, ante,* p. 273.