Raymond COX, Appellee,

v.

**CITY OF CHATTANOOGA et al.,
Appellants.**

Court of Appeals of Tennessee,
Eastern Section.

July 18, 1973.

Certiorari Denied by Supreme Court
Feb. 19, 1974.

Certiorari Denied by U. S. Supreme Court
Oct. 31, 1974.   See 95 S.Ct. 58.

Eugene N. Collins and Randall L. Nelson, Chattanooga, for appellants.

Jerry H. Summers, Chattanooga, for appellee.

OPINION

PARROTT, Judge.

The Board of Commissioners of the City of Chattanooga has appealed from the chancellor's order reinstating fire captain Raymond Cox whose dismissal for insubordination and conduct unbecoming the firefighting service was unanimously affirmed by the Board.

The Chattanooga Police Department was conducting an investigation of a murder which occurred in that city on March 11, 1972. Harry Brooks Daniels, a suspect of the murder, was arrested in Atlanta, Georgia. On his person was found an address

book which contained the name of Raymond Cox, his home telephone number and the two telephone numbers of the precinct station where Captain Cox worked. Two city detectives went to the Cox home and requested he accompany them to the Chattanooga Police Department for questioning. Captain Cox voluntarily rode to the headquarters where the police presented the following form which Captain Cox refused to sign:

## YOUR CONSTITUTIONAL RIGHTS

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you will still have the right to stop answering questions at any time. You also have the right to stop answering questions at any time until you talk to a lawyer.

## WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure, force or coercion of any kind has been used against me.

Signed_____

(refused)

Commissioner of the Fire and Police Departments of the City of Chattanooga,

Gene Roberts, came into the headquarters and informed Captain Cox that if he did not cooperate with the officers in this investigation, that if the city attorney approved, he [Commissioner Roberts] would fire him.

Captain Cox requested to see an attorney. Upon his attorney's arrival at the headquarters and after a private discussion between Cox and his attorney, Cox again refused to answer any questions or look at any of the pictures offered by the investigating officers.

On the next day Commissioner Roberts sent a letter to Captain Cox which stated the following:

"This is to advise you that effective at the end of your working day this date your employment with the Chattanooga Fire Department is terminated.

"You are being dismissed for insubordination, for conduct unbecoming a member of the fire-fighting service and for refusing to cooperate to any extent in an official investigation of the Chattanooga Police Department."

Captain Cox asked for and was granted a hearing before the full Board of Commissioners of the City of Chattanooga. This hearing was held on June 25, 1972, and by unanimous vote the Board affirmed the dismissal of Captain Cox.

Thereafter Captain Cox, by petition for certiorari, asked for a review of the Board's action by the chancery court. In the chancery hearing, after hearing proof on a motion for summary judgment, the chancellor entered a decree holding Captain Cox had a right to remain silent under the Fifth Amendment and his discharge was a violation of his constitutional rights. The chancellor's decree ordered Captain Cox reinstated with full pay.

From this decree the City has appealed asking for a reversal of the chancellor's order.

There are numerous cases involving municipal and public employees' dismissals un-

der the threat of loss of employment. Slochower v. Board of Higher Education of the City of New York 350 U.S. 551, 76 S. Ct. 637, 100 L.Ed. 692, Garrity v. State of New Jersey, 385 U.S. 493, 17 L.Ed.2d 562, 87 S.Ct. 616, Gardner v. Broderick, 392 U. S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082, Uniformed Sanitation Men Assn. v. Commissioner of Sanitation of the City of New York, 392 U.S. 280, 88 S.Ct. 1917, 20 L. Ed.2d 1089, Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212, Zicarelli v. New Jersey State Commission of Investigation, 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234.

As we all know, the Fifth Amendment to the United States Constitution provides that no one shall be compelled in any criminal case to be a witness against himself nor be deprived of life, liberty or property without the due process of law.

Our United States Supreme Court has held this constitutional right to be one of the most valuable prerogatives of a citizen and there shall not be imputed any sinister meaning by one's exercise of the right. Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819.

Also our Supreme Court has held that the free choice to speak out or remain silent is extended to all. In Garrity v. State of New Jersey, supra, the Court said:

" . . . we conclude that policemen, like teachers and lawyers, are not relegated to watered-down version of constitutional rights . . . there are rights of constitutional stature whose exercise a State may not condition by the exaction of a price . . . we now hold the protection of an individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office, that it extends to all, whether they are policemen or other members of our body politic."

The chancellor in his order of reinstatement of Captain Cox cited and heavily relied upon the decision by the United States Supreme Court in Uniformed Sanitation Men Assn. v. Commissioner of Sanitation of the City of New York (1968), 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089, where it was said:

"Petitioners were not discharged merely for refusal to account for their conduct as employees of the city. They were dismissed for invoking and refusing to waive their constitutional right against self-incrimination. They were discharged for refusal to expose themselves to criminal prosecution based on testimony which they would give under compulsion, despite their constitutional privilege. Three were asked to sign waivers of immunity before the grand jury. Twelve were told that their answers to questions put to them by the Commissioner of Investigation could be used against them in subsequent proceedings, and were discharged for refusal to answer the questions on this basis. Garrity v. State of New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), in which we held that testimony compelled by threat of dismissal from employment could not be used in a criminal prosecution of the witness, had not been decided when these 12 petitioners were put to their hazardous choice. In any event, we need not decide whether these petitioners would have effectively waived this constitutional protection if they had testified following the warning that their testimony could be used against them. They were entitled to remain silent because it was clear that New York was seeking, not merely an accounting of their use or abuse of their public trust, but testimony from their own lips which, despite the constitutional prohibition, could be used to prosecute them criminally.

"As we stated in Gardner v. Broderick, supra, if New York had demanded that petitioners answer questions specifically,

directly, and narrowly relating to the performance of their official duties on pain of dismissal from public employment without requiring relinquishment of the benefits of the constitutional privilege, and if they had refused to do so, this case would be entirely different. In such a case, the employee's right to immunity as a result of his compelled testimony would not be at stake. But here the precise and plain impact of the proceedings against petitioners as well as of § 1123 of the New York Charter was to present them with a choice between surrendering their constitutional rights or their jobs. Petitioners as public employees are entitled, like all other persons, to the benefit of the Constitution, including the privilege against self-incrimination. Gardner v. Broderick, supra; Garrity v. State of New Jersey, supra. Cf. Murphy v. Waterfront Commission, 378 U.S. 52, at 79, 84 S.Ct. 1594, 1607, at 1609, 12 L.Ed.2d 678 (1964). At the same time petitioners, being public employees, subject themselves to dismissal if they refuse to account for their performance of their public trust, after proper proceedings, which do not involve an attempt to coerce them to relinquish their constitutional rights."

■ It is apparent from the above, a public employee may be discharged for failing to give an account to his superiors for matters directly relating to the performance of his official duties but not to matters outside the scope of his duties. See Slochower v. Board of Higher Education of the City of New York, supra; Gardner v. Broderick, supra.

■ In this case there is no claim or contention the investigation of the murder was in any way related to or within the scope of duties of Captain Cox. Thus, as distasteful as it may be to some, Captain Cox had the constitutional right under the Fifth Amendment to remain silent. His discharge from his employment, as found by the chancellor, is illegal and in violation of his rights under the Constitution. Accordingly, the decree is affirmed with costs taxed to the appellant.

COOPER, P. J., and SANDERS, J., concur.