**NAVY PUBLIC WORKS CENTER, PEARL HARBOR, HONOLULU, HAWAII, Petitioner/Cross-Respondent,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent/Cross-Petitioner.**

**Nos. 80–7640, 81–7026.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 11, 1982.

Decided May 25, 1982.

---

Freehling, Mary Elizabeth Medaglia, Steven H. Svartz, Federal Labor Relations Auth., Washington, D. C., on brief.

Before SNEED and TANG, Circuit Judges, and STEPHENS*, District Judge.

SNEED, Circuit Judge:

Title VII of the Civil Service Reform Act of 1978, Pub.L.No.95–454, 92 Stat. 1111 (1978), codified the law of labor-management relations in the federal public sector. 5 U.S.C. § 7101 *et seq.* The Federal Labor Relations Authority (FLRA) was created to administer that Title, subject to review by the courts. In this case, the FLRA determined that a union proposal, which arose in the course of collective bargaining between a union and the Navy Public Works Center (Navy) was negotiable. *IBEW, Local 1186 v. Navy Public Works Center, Pearl Harbor, Honolulu, Hawaii,* 4 FLRA No. 32 (1980). The Navy petitions for review and the FLRA cross-applies for enforcement of the resulting decision and order, pursuant to 5 U.S.C. § 7123(a) and (b). We agree with the Navy's contention that the proposal in question is nonnegotiable. We, therefore, refuse to enforce the FLRA decision and order.

## I.

### INTRODUCTION

Title VII imposes a broad duty on a federal employer to bargain over conditions of employment with the authorized employee representative. 5 U.S.C. § 7117. There are, however, certain limitations upon that duty. One limitation is set forth in the management rights section of the Title. That section makes nonnegotiable the employer's authority, *inter alia,* to discipline employees and to assign work. 5 U.S.C. § 7106(a)(2). In contrast, the *procedures* to

Marc Richman, Civ. Div., Dept. of Justice, Washington, D. C., for petitioner/cross-respondent.

Steven H. Svartz, Washington, D. C., for respondent/cross-petitioner; Robert J.

* Honorable Albert Lee Stephens, Senior United States District Judge for the Central District of California, sitting by designation.

be used in exercising these nonnegotiable rights are subject to negotiation. 5 U.S.C. § 7106(b)(2).[1]

The proposal at issue in this case would give employees the right to remain silent during disciplinary investigations and impose a duty on the employer to inform employees of that right.[2] The Navy asserted that this proposal intruded upon the nonnegotiable management rights of section 7106(a)(2). The union claimed the proposal was a negotiable procedure within section 7106(b)(2). The FLRA resolved this dispute in the union's favor.

An FLRA negotiability determination is an interpretation of law, which is to be given deference if it is "reasoned and supportable." *Bureau of Alcohol, Tobacco and Firearms v. FLRA*, 672 F.2d 732 (9th Cir. 1982). This deferential standard is especially applicable where the statutory scheme is "untried and new." *Power Reactor Development Co. v. International Union of Electrical, Radio & Machine Workers*, 367 U.S. 396, 408, 81 S.Ct. 1529, 1535, 6 L.Ed.2d 924 (1961), *quoting Norwegian Nitrogen Products Co. v. United States*, 288 U.S. 294, 315, 53 S.Ct. 350, 358, 77 L.Ed. 512 (1933); *see also National Federation of Federal Employees v. FLRA*, 652 F.2d 191, 193 (D.C.Cir.1981). The foregoing principles, however, do not relieve the reviewing court of its duty to assure that agency action is not arbitrary, capricious, an abuse of discretion or otherwise contrary to law. *See* 5 U.S.C. § 706(2)(A) and § 7123(c). After careful analysis, we are compelled to conclude that the FLRA's construction of

section 7106 in this case is not "reasonably defensible." *Bureau of Alcohol, Tobacco and Firearms, supra* 672 F.2d at 735; *see also Department of Defense v. FLRA*, 659 F.2d 1140, 1161 (D.C.Cir.1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982).

II.

ANALYSIS

Application of section 7106 turns upon the elusive distinction between *substantive* and *procedural* proposals. This distinction is always troublesome because each type extended unduly diminishes the scope of the other. In addition, the distinction frequently will not be clear. On one hand, unions could use procedural language in framing proposals, the impact of which would be primarily substantive. *See id.* at 1149–50 (proposed procedure eliminated agency discretion and was therefore nonnegotiable). On the other hand, federal employers could assert as a management prerogative the authority to act in a manner totally inconsistent with proposals designed to provide bona fide procedural protections. In each case, the federal agencies and courts must attempt to fix the limits of "the range of proposals to be deemed 'procedural' within the contemplation of the statute." *Id.* at 1152. If a proposal does not fit comfortably within the procedural pigeon-hole of (b)(2), the question becomes whether it intrudes upon the managerial authority protected by (a)(2). As usual, our goal is to determine

---

1. Section 7106 states:

(a) Subject to subsection (b) of this section, nothing in this chapter shall affect the authority of any management official . . . . . . .

(2) in accordance with applicable laws—
(A) to hire, assign, direct, layoff, and retain employees in the agency, or to suspend, remove, reduce in grade or pay, or take other disciplinary action against such employees;
(B) to assign work . . . .
(b) Nothing in this section shall preclude any agency and any labor organization from negotiating—
. . . .

(2) procedures which management officials will observe in exercising any authority under this section . . . .

2. The proposal read as follows:
[D]iscussions that may lead to disciplinary actions will be held between a supervisor having authority to propose the action, the employee concerned, and his steward if requested. *The employee has the right to speak or remain silent or refuse to give a written statement and shall be so informed by the employer at the outset of the inquiry or investigation.*
(Emphasis added.) The dispute involves only the italicized portion of the proposal.

the intent of Congress and to be guided by it in applying the law to the particular situation before us.[3]

The FLRA's analysis proceeds as follows: The duty to warn of the right to be silent does not absolutely prevent the Navy from disciplining employees or assigning work. In response to the claim that the proposal would eliminate a traditional substantive ground for discipline, i.e., the insubordination implicit in such refusal to cooperate with management, the FLRA merely states, "inasmuch as the Union's proposal would create a contractual right . . . to remain silent during an investigation it is unnecessary to reach or pass upon the general question . . . as to whether or under what circumstances an employee's refusal to respond might otherwise constitute insubordination . . . ." *IBEW, Local 1186 v. Navy Public Works Center, supra,* 4 FLRA No. 32, at 5. The proposal is not seen by the FLRA as a means to reduce public employee accountability, nor to interfere with "effective and efficient" government operations, *cf.* 5 U.S.C. § 7101 (instructing that the Title's provisions should be interpreted in a manner consistent with such operations). Finally, the FLRA considers cases dealing with the application of the Fifth Amendment right against compulsory self-incrimination, proffered by the Navy, to be inapposite. The FLRA, in this manner,

concludes that the proposal is procedural and within (b)(2).

The fundamental defect in the foregoing analysis is that it addresses only a part of the challenged proposal, *viz.,* the *duty* to warn of the right to remain silent. Plainly read, the proposal has two parts. The other part grants the employees the contractual *right* to remain silent during disciplinary investigations. While a proposal that would impose a duty to warn an employee of a right he possesses can be viewed as procedural, the proper characterization of a proposal that embodies both the duty to warn *and* the right of which the employer is warned must be controlled by the latter, not the former. Otherwise it could be said that a proposal that places upon the federal employer the duty to warn an employee that the employer has no power to discipline employees and strips the employer of the power to discipline is procedural and within the scope of (b)(2). To proceed in this manner would severely erode, if not destroy, the employer's nonnegotiable authority under (a)(2).

█ Approached properly, the issue before us is whether the FLRA's holding that a proposal, which would give the employees the right to remain silent during disciplinary investigations, is procedural under (b)(2)[4] is "reasoned and supportable." We conclude that it is not.

3. In pursuit of this end the FLRA and the Navy argue over the correct interpretive standard for determining which procedurally-phrased proposals are within the ambit of section 7106(b)(2). The FLRA contends that such proposals lie within section 7106(b)(2) unless they prevent management from "acting at all" in the area of reserved management rights. The Navy presses two alternate standards, *i.e.,* the proposal must not "unreasonably delay" or "directly infringe" management's exercise of its rights. The FLRA's rejection of the unreasonably-delay standard was recently approved by the D. C. Circuit. *See Department of Defense, supra,* 659 F.2d at 1152–57. The FLRA, however, has employed both the acting-at-all standard and a "directly interfere" standard in the past. Apparently the latter standard is reserved for proposals with more direct substantive impacts, while the former is applied to more pristinely procedural proposals. *See id.* at 1159 (a consolidated appeal affirming the FLRA's use of the alternate standards depend-

ing on the level of substantive impact); *see also PATCO v. FLRA,* 5 FLRA No. 101 (1981) (procedural proposal that directly interfered with management prerogatives held nonnegotiable). The FLRA does not explain why it chose to apply the acting-at-all standard, rather than the directly-interfere standard, in this case. We do not need to address this problem, however, because we find the proposal nonnegotiable even under the more demanding acting-at-all standard.

4. Although this holding was never clearly expressed it is implicit in the FLRA's conclusion that the entire proposal was negotiable under (b)(2) and in its assumption that a "contractual right" to be silent could be granted. The failure to more directly examine the negotiability of a right to be silent, as opposed to the subsidiary duty to warn of such a right, represents a disingenous attempt to sidestep the central issue raised by the Navy's challenge. Our ensu-

■ Our conclusion rests upon our perception of an overriding purpose of Congress in enacting the 1978 Act. This purpose was "to make the government more efficient and accountable."[5] Inasmuch as all who work for government are employees in the fundamental political sense, it follows that *all* must be more accountable if *government* is to be more accountable. It is true, of course, that Congress did not wish to impair the legitimate rights of employees by expanding the managerial powers of their superiors. To prevent this, the Act provided protections to such employees to offset enlarged managerial power. Title I, 5 U.S.C. § 2301 *et seq.*, which elevated the merit system principles to the status of statutory law, is one such protection.[6] Title VII, containing the labor-management relations provisions, is another.[7] However, it is clear that the ultimate intent was to provide a "balanced bill" that would "allow civil servants to be able to be hired and fired more easily, but for right reasons."[8]

■ We cannot believe that a proposal that to a significant degree relieves an employee of a duty to account to his superiors, as does the proposal at issue in this case, makes "government more efficient and accountable." Courts have long recognized the existence of a duty of public employees "to account for their performance of their public trust . . . ." *Uniformed Sanitation Men Assn. v. Commissioner of Sanitation*, 392 U.S. 280, 285, 88 S.Ct. 1917, 1920, 20 L.Ed.2d 1089 (1968); *see also Beilan v. Board of Education*, 357 U.S. 399, 405, 78 S.Ct. 1317, 1321, 2 L.Ed.2d 1414 (1958).[9] Moreover, imposing and enforcing a duty to account, whether generally or in disciplinary investigations, lies within the scope of the powers to assign work and to discipline employees, which are nonnegotiable management rights of section 7106(a)(2). To remove from the reach of disciplinary power a refusal to account during disciplinary investigations is to reduce the power to discipline employees. To proscribe the listing of a duty to account as a part of an employee's job description is to reduce the power to describe the duties embodied in the work assigned.

We recognize that the right to remain silent is protected by the Fifth Amendment when properly invoked. Nothing said in this opinion is intended to suggest that Fifth Amendment rights are suspect. Nor do we intend to suggest that a federal employee is not entitled to his Fifth Amendment rights even when invoked in a disciplinary proceeding. The proposal at issue in this case, if accepted by the Navy as a result of negotiations, would extend far beyond the reach of the Fifth Amendment and would eliminate certain nonnegotiable employer powers. The existence of

ing analysis, therefore, proceeds as if the FLRA had *expressly* held that the right to be silent is a negotiable procedure under (b)(2).

5. S.Rep.No.95–969, 95th Cong., 2d Sess. 2, *reprinted in* 1978 U.S.Code Cong. & Ad.News 2723, 2724 (hereinafter referred to as Senate Report with citation to the relevant page in the U.S.Code Cong. & Ad.News). In providing general background for the Act, the Senate Report proceeds to state: "Both the public and *those in government have a right to the most effective possible civil service; that is*, one in which employees are hired and removed on the basis of merit and *one which is accountable to the public* through its elected leaders. *Id.* at 2724–25 (emphasis added).

6. These principles include the protection of employees "against inquiries into or actions based upon, non-job-related conduct." *Id.* at 2741. The fact that Congress expressly provided protection only against non-job-related inquiries in

Title I does not foreclose the possibility that protection against inquiries into job-related conduct could be achieved through negotiation under Title VII. It does, however, lend some support to our conclusion that Congress, in drafting section 7106, did not envision such a result.

7. *See* 124 Cong.Rec. 38,713 (statement of Rep. Ford).

8. Senate Report at 2726.

9. The FLRA tries to distinguish these cases on the ground that they involve situations in which the duty to account had been formalized in a statute or regulation. First, in *Beilan* this does not appear to have been the case. Second, the question is not whether management has exercised this authority, but whether management may exercise it.

Fifth Amendment rights provides to us assurance that our holding does not diminish the civil rights of federal employees. However, we are convinced that the right to negotiate for contractual immunity from discipline for refusing to account to a superior during disciplinary investigations is not one of these rights.

Therefore, we deny the request of the FLRA to enforce its decision and order.

DENIED.