STATE OF NEBRASKA, DEPARTMENT OF CORRECTIONAL SERVICES, APPELLANT AND CROSS-APPELLEE, v. ROBERT GALLAGHER, APPELLEE AND CROSS-APPELLANT.

334 N.W.2d 458

Filed May 27, 1983. No. 82-644.

Paul L. Douglas, Attorney General, and J. Kirk Brown, for appellant.

Steven E. Achelpohl and Gregg H. Coffman of Dwyer, O'Leary & Martin, P.C., for appellee.

KRIVOSHA, C.J., BOSLAUGH, MCCOWN, WHITE, HASTINGS, and CAPORALE, JJ., and COLWELL, D.J., Retired.

MCCOWN, J.

This is an appeal from an order of the District Court affirming an order of the State Personnel Board reinstating appellee, Robert Gallagher, to his employment as a parole officer with the Department of Correctional Services, and denying a request for backpay. The State has appealed from the order of reinstatement, and the appellee has cross-appealed from that portion of the order denying him backpay.

On December 6, 1980, Robert Gallagher, a parole

officer with the State Department of Correctional Services, was arrested at his home in Omaha and booked on two counts of third degree gambling and one count of possession of gambling records.

Items confiscated from his home included parlay sheets, payoff records, and betting sheets. The search warrant for Gallagher's residence was based on information obtained from a wiretap placed on Gallagher's phone pursuant to an application to the District Court on October 22, 1980, and an order entered on that application. The affidavit supporting the application showed that by investigation and surveillance the police believed Gallagher was linked with alleged gambling activities in Omaha.

On December 9, 1980, Gallagher was suspended by the Department of Correctional Services pursuant to § 13.14.5 of the rules and regulations of the department, which provides: "Employees who are under investigation for or charged with criminal activity may, following a meeting as prescribed in paragraph 13.11.2 be indefinitely suspended pending outcome of a trial or investigation. Employees who are found guilty shall not be compensated for the suspension and may be dismissed. If they are not found guilty or if no judicial action is taken, they may be restored to their position and granted full pay and service credit for the period of their suspension, if circumstances justify such restoration."

On December 17, 1980, Gallagher was terminated by the department. A few days later the state car previously assigned to Gallagher was cleaned and inventoried by department personnel before returning the car to the state motor pool for reassignment.

While cleaning the car they discovered a package of "harp sheets" in the trunk of the car. The "harp sheets" consisted of typewritten and mimeographed pages which gave team selection information and point spreads on professional football games.

Meanwhile, Gallagher filed a grievance with the director of the Department of Personnel requesting

reinstatement pending the outcome of the criminal charges that had been brought against him. On February 20, 1981, the director reinstated Gallagher to a suspended-without-pay status pending resolution of the charges against him.

On March 13, 1981, the criminal charges against Gallagher were dismissed. The Department of Correctional Services continued to investigate and on April 7, 1981, took Gallagher's deposition. Gallagher was questioned as to his involvement with gambling and drug activities, but refused to answer any such questions on advice of his counsel.

The State then questioned Gallagher about the "harp sheets" found in the state car assigned to him. Gallagher admitted that he wrote, published, and sold the "harp sheets" at $50 per page, and admitted that it was possible that the sheets were found in his state car. On advice of counsel, however, Gallagher refused to respond when he was asked if he had used his state car to transport the "harp sheets," if he had ever taken the sheets to his parole office, if he had ever worked on the sheets at his office, or if he had ever sold such sheets to parolees or to other members of the department.

On April 14, 1981, Gallagher was advised that the circumstances did not justify his reinstatement as a parole officer and he was dismissed from state service. Gallagher again filed a grievance with the director of the Department of Personnel protesting his termination.

On June 2, 1981, the District Court for Douglas County found that the evidence obtained by the wiretap which had supported the search of Gallagher's home in connection with the criminal charges had been in violation of state law, and suppressed all the intercepted wire communications.

On June 26, 1981, the director of the Department of Personnel upheld Gallagher's termination upon the ground that Gallagher's refusal to answer questions about the "harp sheets" at his deposition left

the Department of Correctional Services with insufficient information to determine if circumstances warranted his reinstatement.

Gallagher appealed the director's decision to the Nebraska State Personnel Board, which appointed a hearing officer to hear the case and issue a recommendation to the board. The hearing officer concluded that the department could not rely upon Gallagher's refusal to answer questions about the "harp sheets" found in the trunk of his car because the investigation and inquiry and the discovery of the "harp sheets" would not have occurred but for using the knowledge obtained from the illegal wiretap. The hearing officer determined that the statutory exclusionary rule excluding from evidence the contents of any unlawful wiretap communication and evidence derived therefrom required the conclusion that the discovery of the "harp sheets" was a part of the fruit of the illegal wiretap. The hearing officer therefore recommended that Gallagher be reinstated.

On October 26, 1981, by a 3-to-2 decision, the personnel board held that Gallagher's termination was not supported by competent evidence and ordered him reinstated. The board concluded, however, that Gallagher's lack of cooperation severely and unnecessarily impeded the department's attempts to resolve the situation, and denied Gallagher backpay and benefits.

The Department of Correctional Services appealed the decision of the personnel board to the District Court. The District Court found that the board's decision did not prejudice the substantial rights of the Department of Correctional Services within the meaning of Neb. Rev. Stat. § 84-917(6) (Reissue 1981), and affirmed the decision of the personnel board in all respects.

The Department of Correctional Services has appealed from the order of reinstatement, and Gallagher has cross-appealed from the denial of backpay.

Neb. Rev. Stat. § 86-712 (Reissue 1981) provides: "No part of the contents of any intercepted wire or oral communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a state, or a political subdivision thereof if the disclosure of that information would be in violation of Chapter 86, article 7."

Neb. Rev. Stat. § 86-705(11) (Reissue 1981) provides in part: "Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of this state, may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that the communication was unlawfully intercepted, the order of authorization or approval under which it was intercepted is insufficient on its face, or the interception was not made in conformity with the order of authorization or approval. . . . If the motion is granted, the contents of the intercepted wire or oral communication, or evidence derived therefrom, shall be treated as having been obtained in violation of sections 86-701 to 86-707."

On this appeal the State contends that the "harp sheets" discovered in the state-owned car assigned to Gallagher, and Gallagher's refusal to answer questions about those "harp sheets," were not evidence derived from an unlawful police wiretap. The State also contends that the questions about the "harp sheets" which Gallagher refused to answer were specific and directly and narrowly related to the performance of his official duties, that he was not required or requested to waive or surrender immunity, and that his refusal to answer constituted grounds for his dismissal.

Gallagher's position is that the "harp sheets" and the resulting questions about them were derived

from the original unlawful police wiretap of Gallagher's telephone and, consequently, constituted fruit of an illegal wiretap which cannot be used against him in any sort of proceeding. He argues that but for the illegal wiretap the police would not have searched his home, would not have found any evidence, and would not have arrested him. If he had not been arrested, he argues, he would not have been dismissed, the department would not have cleaned out his state car, the "harp sheets" would not have been found, and the department would not have questioned him about the use of state property in connection with the "harp sheets."

In response to a similar argument Justice Frankfurter said: "Sophisticated argument may prove a causal connection between information obtained through illicit wire-tapping and the Government's proof. As a matter of good sense, however, such connection may have become so attenuated as to dissipate the taint." *Nardone v. United States*, 308 U.S. 338, 341, 60 S. Ct. 266, 84 L. Ed. 307 (1939).

The U.S. Supreme Court refused to adopt a "but for" rule in such cases. The Court said: "We need not hold all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Wong Sun v. United States*, 371 U.S. 471, 487-88, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963).

In the case at bar the discovery of the "harp sheets" did not come about as an exploitation of the illegal wiretap. There is no evidence that any information obtained in the wiretap, or any of the items seized in the search of Gallagher's residence, indicated that "harp sheets" were located in Galla-

gher's state-owned car or caused the Department of Correctional Services to examine or check the car. The evidence shows that state cars are automatically cleaned and inventoried when state employees are terminated, regardless of the reason for the termination. The evidence also shows that the department rules and regulations gave the department the right to inspect state-owned vehicles at any time.

If Gallagher's "but for" argument were carried to its ultimate limit, if the State had found a corpse in the trunk of Gallagher's car rather than "harp sheets," the State would be forbidden to ask Gallagher about the body because the State would not have inspected the car but for the original illegal wiretap and the subsequent arrest. Gallagher's argument is simply unsupportable.

The discovery of the "harp sheets" by the Department of Correctional Services during its independent, administratively inspired inventory of Gallagher's state-owned car was sufficiently independent and distinguishable from the police wiretap to purge the "harp sheets" from any taint arising from the wiretap. The "harp sheets" were not evidence derived from an unlawful police wiretap.

Gallagher also contends that the Department of Correctional Services could not discharge him for his refusal to answer questions about the "harp sheets." He argues that his privilege against self-incrimination protects him from a threat of dismissal based upon his refusal to answer such questions.

The U.S. Supreme Court has held that if a public employee refuses to answer questions specifically, directly, and narrowly relating to the performance of his official duties, without being required to waive his immunity with respect to the use of his answers in a criminal prosecution against himself, the privilege against self-incrimination will not be a bar to his dismissal. *Gardner v. Broderick*, 392 U.S. 273, 88 S. Ct. 1913, 20 L. Ed. 2d 1082 (1968); *Sanitation*

*Men v. Sanitation Comm'r*, 392 U.S. 280, 88 S. Ct. 1917, 20 L. Ed. 2d 1089 (1968).

The case of *Gulden v. McCorkle*, 680 F.2d 1070 (5th Cir. 1982), discusses the cases in this area at length and reflects the majority view. That case holds that when public employees are compelled to testify by threat that otherwise they will be removed from office, the testimony that they give cannot be used against them in a subsequent prosecution.

Public employees may be required to answer even potentially incriminating questions if they have not been required to surrender their constitutional immunity.

A public employee's refusal to answer questions where there has been no requested surrender of protected rights is a ground for his dismissal.

Public employees are not entitled to an affirmative tender of immunity before they may be required to answer questions specifically, directly, and narrowly related to the performance of the employee's public duties.

A parole officer, like other law enforcement officers, carries an unusually heavy responsibility to his public employer. His position is such that any personal participation in almost any sort of criminal activity may very well impair or destroy his effectiveness as a parole officer. To say the least, he should be required to answer reasonable questions concerning the performance of his official duties, even if those questions are potentially incriminating, so long as he has not been required to surrender his constitutional immunity. Gallagher's refusal to answer such questions as to the "harp sheets" constituted grounds for his dismissal.

In view of the disposition made of the State's appeal, it is unnecessary to discuss Gallagher's cross-appeal.

The order of the District Court affirming the order of the State Personnel Board reinstating Gallagher to his employment as a parole officer is reversed,

and the cause is remanded to the District Court with directions to enter an order affirming the action of the Department of Correctional Services in terminating Gallagher's employment.

REVERSED AND REMANDED
WITH DIRECTIONS.