Detective Russell Littleton Little Rock Police Department 700 West Markham Little Rock, Arkansas 72201
Dear Detective Littleton:
I am writing in response to your request, made pursuant to A.C.A. § 25-19-105(c)(3)(B)(i), which is contained within the Arkansas Freedom of Information Act (the "FOIA"), A.C.A. §§ 25-19-101 — 109 (Repl. 2002 and Supp. 2007), for my opinion regarding the propriety of the provisional decision of the Little Rock Police Department's custodian of records to release to a requesting newspaper records relating to what you characterize as an "administrative investigation" that led to your suspension from the Department without pay for a period of 30 days. I have not been provided with a copy of the FOIA request itself, but based upon your characterization, I gather the requestor is seeking copies of the records generated in an internal affairs investigation that led to your suspension. My inquiries reveal that the time for you to file an administrative appeal of your suspension has passed.
RESPONSE
Given that I have not been provided with a copy of the FOIA request, I cannot accurately determine its scope. However, I can and will discuss below the categories of information that an internal investigation file might contain, setting forth in the process the legal standards the custodian should apply in determining precisely what records are subject to disclosure and what information contained in those records might be subject to redaction. *Page 2 
The FOIA provides for the disclosure upon request of certain "public records," which the Arkansas Code defines as follows:
 "Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium, required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
A.C.A. § 25-19-103(5)(A) (Supp. 2007).
Because you are a city employee, I believe the requested documents are clearly "public records" under the definition set forth above. However, the FOIA provides for certain exemptions from disclosure, the most pertinent being that set forth at A.C.A. § 25-19-105(c)(l), which exempts from disclosure under specified circumstances employee evaluations and job performance records. "Employee evaluation or job performance records" are releasable only if certain conditions have been met. Subsection 25-19-105(c)(1) of the Code provides in pertinent part:
 [A]ll employee evaluation or job performance records, including preliminary notes and other materials, shall be open to public inspection only upon final administrative resolution of any suspension or termination proceeding at which the records form a basis for the decision to suspend or terminate the employee and if there is a compelling public interest in their disclosure.
The FOIA does not define the term "employee evaluation or job performance records" as used in A.C.A. § 25-19-105(c), nor has the phrase been construed judicially. This office has consistently taken the position that any records that were created by or at the behest of the employer and that detail the performance or lack of performance of the employee in question with regard to a specific incident or incidents are properly classified as employee evaluation or job performance records.See, e.g., Ark. Ops. Art'y Gen. Nos. 2008-004; 2007-225; 2006-111; 2006-038; 2006-035; 2005-030; 2004-211; 2003-073; 98-006; 97-222; 95-351; 94-306; 93-055. The record must also have been created for the purpose of *Page 3 
evaluating an employee. See, e.g., Ark. Op. Art'y Gen. No. 2008-004; 2006-038; 2004-012. The exemption promotes candor in a supervisor's evaluation of an employee's performance with a view toward correcting any deficiencies. See J. Watkins R. Peltz, The Arkansas Freedom ofInformation Act (m m Press, 4th ed. 2004), at 196.
The FOIA at no point defines the phrase "compelling public interest" as used in the final prong of the test for disclosure set forth in A.C.A. § 25-19-105(c)(l). However, two leading commentators on the FOIA, referring to this office's opinions on this issue, have offered the following guidelines:
 [I]t seems that the following factors should be considered in determining whether a compelling public interest is present: (1) the nature of the infraction that led to suspension or termination, with particular concern as to whether violations of the public trust or gross incompetence are involved; (2) the existence of a public controversy related to the agency and its employees; and (3) the employee's position within the agency. In short, a general interest in the performance of public employees should not be considered compelling, for that concern is, at least theoretically, always present. However, a link between a given public controversy, an agency associated with the controversy in a specific way, and an employee within the agency who commits a serious breach of public trust should be sufficient to satisfy the "compelling public interest" requirement.
Watkins Peltz, supra at 207 (footnotes omitted). Professors Watkins and Peltz also note that "the status of the employee" or "his rank within the bureaucratic hierarchy" may be relevant in determining whether a "compelling public interest" exists. Id. at 206 (noting that "[a]s a practical matter, such an interest is more likely to be present when a high-level employee is involved than when the [records] of `rank-and-file' workers are at issue.") With respect to allegations of police misconduct, I noted as follows in Op. Art'y Gen. No. 2007-206:
 I and my predecessors have previously stated . . . on this general topic that a compelling public interest likely exists in information reflecting a violation of departmental rules by a "cop on the beat" in his interactions with the public. See Op. Art'y Gen. 2006-106. If the prior disciplinary records reflect a suspension based on this type of *Page 4 
infraction, a strong case for the finding of a compelling public interest exists.
However, the existence of a "compelling public interest" in disclosure will necessarily depend upon all of the surrounding facts and circumstances.
As noted above, there has reportedly been a final administrative resolution of your suspension, meaning that all documents created by or at the behest of the Department that formed a basis for your suspension should be subject to disclosure, assuming no other exemptions apply, if a compelling public interest exists in their production. The custodian of records will be charged with making this determination.
As I noted in Ark. Op. Art'y Gen. No. 2007-025:
 My predecessors have consistently opined that records in an internal affairs file that have been "generated at the behest of an employer in the course of investigating a complaint against an employee constitute `employee evaluation/job performance records'" within the meaning of the FOIA. See Ops. Art'y Gen. 2006-106; 2005-267; 2005-094; 2004-178; 2003-306; and 2001-063. It has been opined, however, that "[documents not created in the evaluation process do not come within the rationale behind the 25-19-105(c)(1) exemption." See Op. Art'y Gen. 2007-025; 2005-267, citing Op. Art'y Gen. 2005-094.
It is quite possible that certain records contained within an internal affairs file would not have been generated by or at the behest of the employer specifically in the course of investigating a complaint. Some such records, such as those that merely contain administrative information about an employee, might properly be characterized as personnel records, as distinct from employee evaluation/job performance records.
Under the FOIA, "personnel records" are open to public inspection and copying except "to the extent that disclosure would constitute a clearly unwarranted invasion of personal privacy." A.C.A. § 25-19-105(b)(12) (Supp. 2007). The FOIA does not define the term "personnel records." Whether a particular record constitutes a "personnel record," within the meaning of the FOIA is, of course, a question of fact that can only be determined upon a review of the record itself. However, the Attorney General has consistently taken the position that "personnel *Page 5 
records" are all records other than employee evaluation and job performance records that pertain to individual employees, former employees, or job applicants. See, e.g., Op. Art'y Gen. No. 1999-147,citing Watkins, THE ARKANSAS FREEDOM OF INFORMATION ACT (m m Press, 3rd ed., 1998), at 134.
The FOIA likewise does not define the phrase "clearly unwarranted invasion of personal privacy." However, the Arkansas Supreme Court has construed the phrase. In determining which disclosures constitute a "clearly unwarranted invasion of personal privacy," the court applies a balancing test, weighing the interest of the public in accessing the records against the individual's interest in keeping the records private. See Young v. Rice, 308 Ark. 593, 826 S.W.2d 252 (1992). If the public's interest outweighs the individual's interest, the release of the records will not constitute a "clearly unwarranted invasion of personal privacy." If there is little public interest in the information, the privacy interest will prevail if it is not insubstantial. Stilley v. McBride, 332 Ark. 306, 965 S.W.2d 125 (1998). As the court noted in Young:
 The fact that section 25-19-105(b)(10) [now subsection 105(b)(12)] exempts disclosure of personnel records only when a clearly unwarranted personal privacy invasion would result, indicates that certain "warranted" privacy invasions will be tolerated. Thus, section 25-19-105(b)(10) requires that the public's right to knowledge of the records be weighed against an individual's right to privacy. . . . Because section 25-19-105(b)(10) allows warranted invasions of privacy, it follows that when the public's interest is substantial, it will usually outweigh any individual privacy interests and disclosure will be favored.
308 Ark. at 598. However, as the court noted in Stilley v. McBride,332 Ark. 306, 312, 965 S.W.2d 125 (1998), when "there is little relevant public interest" in disclosure, "it is sufficient under the circumstances to observe that the employee's privacy interest in nondisclosure is not insubstantial." Given that exemptions from disclosure must be narrowly construed, it is the burden of an individual resisting disclosure to establish that his "privacy interests outweighed that of the public's under the circumstances presented." Id. at 313. The fact that the subject of any such records may consider release of the records an unwarranted invasion of personal privacy is not relevant to the analysis. See Ark. Ops. Art'y Gen. Nos. 2001-112; 2001-022; 94-198; 94-178; and 93-055; Watkins Peltz, supra at 126. The test is an objective one. See, e.g., Ark. Op. Art'y Gen. 96-133. The question of whether the release of any particular personnel record would constitute a clearly *Page 6 
unwarranted invasion of personal privacy is always a question of fact to be made by the custodian of records. Ops. Art'y Gen. 2008-025; 2004-260; 2003-336; 2003-201; 2001-101; 98-001.
With respect to the issue of how various records should be classified, unsolicited third-party complaints against an employee, which might be contained in an internal affairs file to reflect a pattern of possible misconduct, are not considered employee evaluation/job performance records, although they do qualify as "personnel records" subject to review under the standard stated above. See Ark. Op. Art'y Gen. No. 2007-206. With regard to any other records relating to your suspension, I should note that a letter of suspension or dismissal may or may not qualify as an "employee evaluation/job performance record" subject to the standard of review set forth above. This office has consistently opined that a letter of suspension or termination that details the reasons for the disciplinary action is an employee evaluation or job performance record for purposes of the FOIA. See, e.g., Ark. Ops. Att'y Gen. Nos. 2006-026 and 95-171 (relying on Ark. Ops. Art'y Gen. Nos. 92-191 and 88-97). However, if correspondence merely announces the fact of the termination, the custodian should determine its disclosability under the FOIA using the standard for the disclosure of personnel records.
The custodian should further be aware that any party who is identifiable from any of the requested records may have a constitutionally protected privacy interest in those records. The Arkansas Supreme Court has recognized that the constitutional right of privacy can supersede the specific disclosure requirements of the FOIA, at least with regard to the release of documents containing constitutionally protectable information. See McCambridge v. City ofLittle Rock, 298 Ark. 219, 766 S.W.2d 909 (1989). TheMcCambridge court held that a constitutional privacy interest applies to matters that: (1) an individual wants to and has kept confidential; (2) can be kept confidential but for the challenged governmental action in disclosing the information; and (3) would be harmful or embarrassing to a reasonable person if disclosed.
The question of whether information is protectable under the constitutional right of privacy is one of fact that must be determined in the first instance by the custodian of the records, on the basis of the facts of the case. If the custodian of the records determines factually that the records contain constitutionally protectable information (i.e., information that meets the three prongs of the test laid out by the McCambridge court), the custodian must then consider whether the governmental interest in disclosure under the Act (i.e., the public's legitimate interest in the matter) outweighs the privacy interest in their nondisclosure. As *Page 7 
always, the person claiming the right will have the burden of establishing it. Accord, Ark. Ops. Att'y Gen. Nos. 2007-001; 2006-141 and 2001-122.
In addition to the exemptions discussed above, various types of information are subject to possible redaction prior to disclosure of a record. Among these are medical records, A.C.A. § 25-19-105(b)(2); portions of records listing the home addresses of nonelected municipal employees, A.C.A. § 25-19-105(b)(12); all or portions of records disclosing "[t]he identities of law enforcement officers currently working undercover with their agencies and identified in the Arkansas Minimum Standards Office as undercover officers," A.C.A. § 25-19-105(b)(10)(A) (see Ark. Ops. Att'y Gen. Nos. 2005-068 (stressing that the exemption applies only to officers "currently" working undercover); 2002-087 (opining that it would be inappropriate to release the names of undercover police officers); compare Ark. Ops. Att'y Gen. Nos. 2007-213; 98-130; 98-101; 97-286; 96-005 and 90-131 (all opining that while the identity of public employees is ordinarily a matter of significant public interest, it would be inappropriate to release photographs even of officers who have recently served as undercover operatives); portions of records revealing social security numbers,5 U.S.C. § 552a (the Federal Privacy Act); and portions of records disclosing driver's license numbers, 18 U.S.C. § 2721 (the Driver's License Privacy Protection Act). See Ark. Ops. Att'y Gen. Nos. 2008-046; 2006-035; 2003-153; 93-300; and 91-003. The custodian will need to determine which, if any, of these exemptions apply.
Finally, I must respectfully disagree with your contention that disclosure of the requested documents would compromise your right to a fair trial. Specifically, you contend: "The statements I provided during the Administrative investigation are protected by Garrity and not subject to disclosure. It is therefore my opinion the information is not releasable pursuant to Ark. Code Ann. § 25-19-105(b)(8)." Subsection 25-19-105(b)(8) of the Code provides an exemption for "[d]ocuments that are protected from disclosure by order or rule of court."
In my opinion, your reliance on Garrity v. New Jersey, 385 U.S. 493
(1967) is misplaced. As the Court acknowledged in Uniformed SanitationMen Association, Inc. v. Commissioner of Sanitation of the City of NewYork, 392 U.S. 280, 284 (1968), Garrity established only "that testimony compelled by threat of dismissal from employment could not be used in a criminal prosecution of the witness." It may, in fact, be that any testimony you gave in the course of the internal affairs investigation could be characterized as "compelled" by an overt or indirect "threat of dismissal from employment." However, this conclusion does not bear on the question of whether records reflecting such testimony are subject to disclosure *Page 8 
under the FOIA. Garrity precludes only the admission of such records into evidence in a subsequent criminal proceeding. This restriction in no way bears upon the application of the FOIA.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General DM/JHD:cyh *Page 1