Justice Ginsburg,
concurring.
The Court addresses a sole question in this case: Is a private attorney retained by a municipality to investigate a personnel matter eligible for qualified immunity in a suit under 42 U. S. C. § 1983 alleging a constitutional violation committed in the course of the investigation? I agree that the answer is yes and that the judgment of the Court of Appeals holding private attorney Filarsky categorically ineligible for qualified immunity must be reversed. Qualified immunity may be overcome, however, if the defendant knew or should have known that his conduct violated a right “clearly established” at the time of the episode in suit. See Harlow v. Fitzgerald, 457 U. S. 800, 818 (1982). Because the Ninth Circuit did not consider the application of that standard to Filarsky, the matter, as I see it, may be pursued on remand.
Filarsky was retained by the City of Rialto to investigate whether city firefighter Delia was taking time off from work under the false pretense of a disabling physical condition. *395 In pursuit of the investigation, Filarsky asked Delia to consent to a search of his home- to determine what Delia had done with several rolls of insulation he had recently purchased at a home improvement store. When Delia, on counsel’s advice, refused to consent to the search, Filarsky “hatch[ed] a plan” to overcome Delia’s resistance. Delia v. Rialto, 621 F. 3d 1069, 1077 (CA9 2010). “[W]e will do it a different way,” Filarsky informed Delia. App. 129; see 621 F. 3d, at 1077 (“Unable to obtain Delia’s consent to a warrant-less search of his house . . . , Filarsky tried a different tactic.”).
Following Filarsky’s advice, Fire Chief Wells ordered Delia to bring the insulation out of his house and place the rolls on his lawn for inspection. App. 158. Filarsky recommended this course, the Ninth Circuit observed, mindful that “an individual does not have an expectation of privacy in items exposed to the public, thereby eliminating the need for a search warrant.” 621 F. 3d, at 1077. Delia complied with Chief Wells’s order by producing the rolls, all of them unused, App. 78, 85, after which the investigation into the legitimacy of Delia’s absence from work apparently ended.
In explaining why the individual defendants other than Fi-larsky were entitled to summary judgment on their qualified immunity pleas, the Ninth Circuit stated that “no . . . threat to [Delia’s] employment” attended Fire Chief Wells’s order. 621 F. 3d, at 1079. The District Court similarly stated that “Delia was not threatened with insubordination or termination if he did not comply with [the] order.” App. to Pet. for Cert. 48.
These statements are at odds with the facts, as recounted by the Court of Appeals. “At the onset of the interview,” the Ninth Circuit stressed, “Filarsky warned Delia that he was obligated to fully cooperate,” and that “[i]f at any time it is deemed you are not cooperating then you can be held to be insubordinate and subject to disciplinary action, up to and including termination.” 621 F. 3d, at 1072 (internal quota *396 tion marks omitted). Continuing in this vein, the Court of Appeals concluded that “Delia’s actions were involuntary and coerced by the direct threat of sanctions including loss of his firefighter position.” Id., at 1077; see id., at 1085 (“Delia’s actions were involuntary and occurred as a result of the direct threat of sanctions.”).
In further proceedings upon return of this case to the Court of Appeals, these questions bear attention. First, if it is “clearly established,” as the Ninth Circuit thought it was, that “the warrantless search of a home is presumptively unreasonable,” id., at 1075, and that a well-trained investigating officer would so comprehend,[1] may an official circumvent the warrant requirement by ordering the person under investigation to cart his personal property out of the house for inspection?[2] And if it is “clearly established” that an employee may not be fired for exercising a constitutional right, see id., at 1079,[3] is it not equally plain that discipline or discharge may not be threatened to induce surrender of such a right?
In short, the Court has responded appropriately to the question tendered for our review, but the Circuit’s law will *397 remain muddled absent the Court of Appeals’ focused attention to the question whether Filarsky’s conduct violated “clearly established” law.

 Deba also suggests that Filarsky’s conduct should be measured against a “reasonable attorney’ standard: whether an attorney providing advice in a public-employee investigation should have known that the search of Delia’s personal property, stored in his home, would be lawless. See Brief for Respondent 45-46.

 An additional inquiry may be appropriate: Although conceived as a substitute for a warrantless entry, should the inspection order Filarsky counseled pass muster as a permissible discovery device? Cf. Oklahoma Press Publishing Co. v. Walling, 327 U. S. 186, 195, 208-211 (1946) (subpoena duces tecum for a corporation’s business records, authorized by § 9 of the Fair Labor Standards Act, encountered no Fourth Amendment shoal).

 The Ninth Circuit referred to cases holding that public employees’ job retention cannot be conditioned on relinquishing the Fifth Amendment’s safeguard against self-incrimination: Uniformed Sanitation Men Assn., Inc. v. Commissioner of Sanitation of City of New York, 392 U. S. 280 (1968), and Gardner v. Broderick, 392 U. S. 273 (1968).