**Craig WARD, C.W. Jensen, and Portland Police Association, Plaintiffs–Appellants,**

**v.**

**CITY OF PORTLAND and Robert Aichele, Defendants–Appellees.**

No. 87–3630.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 8, 1988.

Decided Sept. 29, 1988.

As Amended Dec. 21, 1988.

James S. Coon, Imperati, Barnett, Sherwood & Coon, P.C., Portland, Or., for plaintiffs-appellants.

Harry Auerbach, Deputy City Atty., Portland, Or., for defendants-appellees.

Before HUG, FLETCHER and NELSON, Circuit Judges.

HUG, Circuit Judge:

Two police officers and the Portland Police Association ("Association") brought this action for declaratory and injunctive relief under 42 U.S.C. § 1983 against their employer, the City of Portland, Oregon, and Police Captain Aichele. Plaintiffs challenge the constitutionality of a City policy that requires officers who are involved in fatal shootings to write incident reports before consulting with counsel provided by the Association. The district court granted the defendants' motion to dismiss, finding that the case failed to present a justiciable controversy. We reverse and remand the case to the district court.

## I.

On January 19, 1985 Portland police officers Ward and Jensen were involved in a fatal shooting in the course of their duties. They notified William Aitchison, an attorney who was on retainer to the Association, an organization representing all Portland police officers.

The two officers were able to confer with Attorney Aitchison at the precinct for only a short while before Police Captain Aichele arrived. Captain Aichele removed Mr. Aitchison from the room over the officers' protest in order that the two officers could be questioned about the shooting incident and complete reports on it without the benefit of legal counsel retained by the Association.

The captain took this action pursuant to Portland Police Bureau policy, which requires officers to write reports on incidents involving use of deadly force before consulting counsel. In this case the officers complied with the policy against their will. Later it was determined that the officers' use of deadly force during the incident was proper. Accordingly, they suffered no disciplinary action or criminal prosecution.

The officers and the Association filed this action, alleging several constitutional violations flowing from the policy disallowing officers to consult with the attorney prior to writing reports on fatal shooting incidents. Specifically, they alleged violations of the First Amendment right of association, the Fifth Amendment right against self-incrimination, and the Fourteenth Amendment right to equal protection. The district court dismissed the action, finding that the complaint failed to present a justiciable controversy. The plaintiffs appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291, and our review is *de novo. Fort Vancouver Plywood Co. v. United States,* 747 F.2d 547, 549 (9th Cir.1984).[1]

## II.

In finding that there was no justiciable controversy, the district court relied on an earlier decision of this court, *Portland Police Ass'n v. City of Portland,* 658 F.2d 1272 (9th Cir.1981). In that case the Association sought an injunction against enforcement of the same policy that is at issue here. At that time, however, the policy had never been applied to deny counsel to a Portland police officer who had requested counsel before making a report of a fatal shooting incident in which he had been involved. We held that the complaint did not present a justiciable controversy, stating that "[b]efore a case is justiciable in federal court, it must be alleged that the plaintiff is threatened by injury that is 'both "real and immediate," [and] not "conjectural" or "hypothetical." ' " *Id.* at 1273, *citing O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974). Noting that no police officer had been involuntarily deprived of counsel under the policy, we found the Association's claim was not ripe for judicial intervention as the claim was too speculative. *Portland Police Ass'n,* 658 F.2d at 1273–74.

---

**1.** We find no merit to the defendants' contention that the plaintiffs have failed to preserve their claim of error.

In arriving at our holding, we looked to the *O'Shea* case, where nineteen plaintiffs brought a class action challenging the constitutionality of certain bail-setting and sentencing practices. *O'Shea,* 414 U.S. at 490–92, 94 S.Ct. at 673–74. None of those plaintiffs, however, could allege any specific injury to them resulting from the challenged practices. *Id.* at 495, 94 S.Ct. at 676. Rather, as the Court noted, the plaintiffs were several steps removed from being affected by the practices they challenged. The Court reasoned that, to allege the necessary injury, it was necessary to assume a series of contingencies; namely, that the plaintiffs would violate the law, be charged, tried in proceedings before the defendants, and be subjected to the particular challenged practices. *Id.* at 497, 94 S.Ct. at 676. The Court found that anticipating whether those events would, in fact, occur would lead it "into the area of speculation and conjecture." *Id.* Thus, it held the case was not ripe for review. *Id.* at 499, 94 S.Ct. at 677.

In *Portland Police Ass'n,* we noted that the allegations of the Association were even more speculative than those in *O'Shea. Portland Police Ass'n,* 658 F.2d at 1274. We listed a series of contingencies to illustrate the speculative nature of the claim. We stated:

> Central to any case in which Portland police officers' rights are even arguably violated is the following series of contingencies: the officer must be in a "major incident"; he or she must be at least partly culpable for its occurrence; he or she must request counsel; that request must be denied or counsel must not otherwise be supplied; and, finally, disciplinary or criminal proceedings must be instigated for either failure to complete reports or because of the utterance of incriminating statements during the report process.

*Id.* We held that the Association's claim was "abstract at best" because the Association could "neither offer any history of alleged deprivations, nor assert with assurance that counsel will not be provided in the future." *Id.*

Here, the district court concluded that no justiciable controversy existed because the final event mentioned in our earlier list of contingencies was not present: Officers Ward and Jensen were not disciplined and were not subject to criminal prosecution as a result of any statements made during the report process in the absence of counsel.

The list of contingencies in our prior opinion, however, was not intended as an absolute predetermined list of requirements that must be fulfilled in order for any future action to be considered ripe for determination. There, we were concerned only with the facts of that case in which no application of the policy had yet occurred. It is apparent that the list of contingencies was intended to be illustrative of many speculative events that had not happened. Our only point there was that the police policy had not as yet been applied, and until it was applied it was too speculative to determine the consequences.

At this juncture, many of the postulated events have occurred. The officers were involved in a fatal shooting; they did seek the services of the Association's counsel, and the policy was applied to require that the officers' reports be submitted without the assistance of that counsel. The officers and the Association certainly had a claim for injunctive relief that was ripe at the time the officers sought the services of counsel and such services were denied. However, they did proceed to make their reports without the assistance of counsel, and no disciplinary or criminal charges resulted.

We are thus confronted with the question of whether a justiciable controversy

remains. Since our earlier decision concerning the Portland Police Association, the Supreme Court has rendered its opinion in *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), which bears upon the issue of justiciability in this case.

In the *Lyons* case, Adolph Lyons filed a complaint for injunctive relief barring the City of Los Angeles from using "chokeholds" except in certain threatening situations. *Id.* at 98, 103 S.Ct. at 1663. His complaint alleged that he had been stopped by police officers for a traffic violation and, without any provocation on his part, the officers seized him and held his neck in a "chokehold," damaging his larynx and rendering him unconscious. *Id.* at 97–98, 103 S.Ct. at 1663. The Supreme Court held that Lyons' claim for injunctive relief did not satisfy the requirement that there be an actual case or controversy, because it was unlikely that Lyons would be subjected to the chokehold again. *Id.* at 105, 103 S.Ct. at 1667. The Court found that there was no city policy authorizing the use of a chokehold, absent resistance or provocation by the suspect. *Id.* at 110, 103 S.Ct. at 1669. The Court noted:

> Of course, it may be that among the countless encounters between the police and the citizens of a great city such as Los Angeles, there will be certain instances in which strangleholds will be illegally applied and injury and death unconstitutionally inflicted on the victim. As we have said, however, it is no more than conjecture to suggest that in every instance of a traffic stop, arrest, or other encounter between the police and a citizen, the police will act unconstitutionally and inflict injury without provocation or legal excuse. And it is surely no more than speculation to assert either that Lyons himself will again be involved in one of those unfortunate instances, or that he will be arrested in the future and provoke the use of a chokehold by resist-

ing arrest, attempting to escape, or threatening deadly force or serious bodily injury.

*Id.* at 108, 103 S.Ct. at 1668.

The Court stated that in order to establish a justiciable controversy,

> Lyons would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either (1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation, or for questioning, or (2) that the City ordered or authorized police officers to act in such manner.

*Id.* at 105–06, 103 S.Ct. at 1667 (emphasis in original).

■ In this case involving the Portland police officers, it can be argued that the controversy is moot because the incident is now over and no disciplinary action resulted. However, the police policy remains in effect, and an exception to the mootness doctrine—"capable of repetition, yet evading review"—must be considered. This exception to the mootness doctrine is applicable in the exceptional case where the challenged action is too short in duration to be fully litigated prior to its cessation or expiration, and there is a reasonable expectation that the same complaining party would again be subject to the same action. *Lee v. Schmidt–Wenzel*, 766 F.2d 1387, 1390 (9th Cir.1985). That doctrine was recently applied in *Honig v. Doe*, —— U.S. ——, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). In the *Lyons* case, the issue was also discussed, but in the *Lyons* case the Supreme Court approached the analysis as a matter of standing—whether the plaintiff "meets the preconditions for asserting an injunctive

claim in a federal forum." *Id.* 461 U.S. at 109, 103 S.Ct. at 1669. In essence, the inquiry is the same—whether there is a sufficient likelihood that the plaintiff or plaintiffs will be wronged again by the policy in question.

■ The case before us differs significantly from *Lyons.* It is quite predictable that there will be instances of fatal shootings in the future and that, after such incidents occur, officers will want to consult with the counsel provided by the Association before submitting reports. Here the City *does* have a policy of not allowing officers to consult counsel in such situations, and there is no indication that the City will discontinue its policy.

Officers Ward and Jensen continue in the employment of the Portland Police Depart-ment, and the likelihood of their becoming again involved in a fatal shooting is not at all difficult to foresee. Certainly the odds are much greater than those facing Lyons. In any event, the Association, which represents all of the officers, is a plaintiff in this action and it is highly likely that one of the officers it represents will again face the imposition of this policy. We conclude that this case presents us with a justiciable controversy. Federal jurisdiction exists, and we therefore remand the case to the district court for further proceedings.

The district court's judgment is REVERSED and the case is remanded for further proceedings.