John J. WILEY, Sergeant; Charles Bealefeld, Officer; Paul B. Deachilla, Officer; Harry Van Cleaf, Officer; Joseph Struck, Officer; Thomas Tomsho, Officer; Fraternal Order of Police, Baltimore City Lodge 3, Incorporated, Plaintiffs–Appellants,

v.

MAYOR AND CITY COUNCIL OF BALTIMORE; Timothy Doory, Individually, and in his official capacity as Assistant State's Attorney for the Baltimore City State's Attorneys Office, Defendants–Appellees,

and

State of Maryland; Baltimore Police Department; Edward J. Tilghman, Commissioner of the Baltimore City Police Department; Stuart Simms, State's Attorney for the Baltimore City State's Attorneys Office, Defendants.

No. 94–1892.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 30, 1995.

Decided March 3, 1995.

**ARGUED:** Michael Lawrence Marshall, Schlachman, Belsky & Weiner, P.A., Baltimore, MD, for appellants. Evelyn Omega Cannon, Asst. Atty. Gen., Baltimore, MD, for appellee Doory; Burton Harry Levin, Asst. City Sol., Baltimore, MD, for appellees Mayor and City Council. **ON BRIEF:** Herbert R. Weiner, Schlachman, Belsky & Weiner, P.A., Baltimore, MD, for appellants. J. Joseph Curran, Jr., Atty. Gen. of Maryland, Baltimore, MD, for appellee Doory; Neal M. Janey, Baltimore City Sol., Baltimore, MD, for appellees Mayor and City Council.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and WIDENER and WILLIAMS, Circuit Judges.

Affirmed by published opinion. Justice POWELL wrote the opinion, in which Judge WIDENER and Judge WILLIAMS joined.

## OPINION

POWELL, Associate Justice.

This appeal requires us to determine whether four Baltimore City police officers may proceed with a claim that their Fifth Amendment rights against self-incrimination were violated when they were ordered to undergo a polygraph examination as a condition of their continued employment. The district court dismissed the action pursuant to Fed.R.Civ.P. 12(b)(6). We affirm.

### I

Because of the procedural posture of this case, we must assume the truth of the factual allegations set forth in the complaint. *See United States v. Currituck Grain, Inc.*, 6 F.3d 200, 202 (4th Cir.1993). Those allegations are as follows:

On December 7, 1987, a shooting incident occurred in Baltimore. It was suspected that officers of the Baltimore City Police Department were involved. Working with Assistant State's Attorney Timothy J. Doory, police investigators conducted a probe of the shooting. Their inquiry focused, at least in part, on the four officers who are appellants here: Sgt. John J. Wiley and Officers Charles Bealfield, Paul B. Deachilla, and Harry Van Cleaf. Although these individuals were assured that they were not suspects,

they were interrogated extensively and were called to testify before a grand jury.[1]

During the investigation, the four officers were ordered to take polygraph tests. In each instance, they were informed that refusal to take the test would lead to disciplinary action such as suspension or termination of employment. Although one officer initially resisted, each ultimately took the polygraph test. The results indicated that three of the officers gave truthful responses; as to the fourth, Sgt. Wiley, the test results were inconclusive. None of the officers asserted, or attempted to assert, his Fifth Amendment rights in connection with the testing.

Although the officers were ordered to undergo the polygraph tests, they were not asked to waive their Fifth Amendment privilege against self-incrimination. Indeed, Sgt. Wiley invoked his Fifth Amendment rights when he appeared before the grand jury. The officers were never charged with any offense, nor were their statements ever used against them.

The officers brought this action under 28 U.S.C. §§ 2201 and 2202 and 42 U.S.C. § 1983, claiming, inter alia, that the compelled polygraph tests violated their Fifth and Fourteenth Amendment rights.

Also named as a plaintiff was the Baltimore City Lodge of the Fraternal Order of Police. Although the complaint originally included a number of parties and claims, previous rulings of the district court and this court pared down the case significantly.[2] The case was further streamlined when, in their brief in the present appeal, Appellants abandoned their claim for damages. Thus, as the case comes to us, the only remaining question is whether Appellants have stated a claim for declaratory and injunctive relief on their core

Fifth Amendment theory regarding the compelled polygraph examinations.[3]

In the decision below, the district court answered this question in the negative. We affirm. Before reaching the merits, however, we must briefly address a pair of preliminary issues.

## II

We turn first to the question of standing. Because the officers have abandoned their damages claim, Appellees argue that there is no longer any justiciable controversy. They rely on Los Angeles v. Lyons, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), in which the plaintiff sought an injunction against the Los Angeles Police Department prohibiting the use of a particular police maneuver for restraining suspects. The Supreme Court found no justiciable case or controversy on the request for injunctive relief because the plaintiff was unable to show a sufficient likelihood that he would again be subjected to the maneuver.[4] Id. at 105, 103 S.Ct. at 1667. Appellees maintain that the officers likewise are unable to show any probability that they will be compelled to undergo a polygraph examination in the future. Thus, they argue, this case is controlled by Lyons.

Were the individual officers the sole remaining appellants, we might be inclined to agree. As the case comes before us, however, the Baltimore City Lodge of the Fraternal Order of Police remains a party to the case. In light of Appellants' well-pleaded allegation that the Baltimore City Police Department maintains a policy of requiring officers to take polygraph tests, we think there is a sufficient likelihood, see Lyons, 461 U.S. at 105, 103 S.Ct. at 1667, that some members

---

1. The complaint does not indicate whether others were also questioned, or whether the case was ever solved.

2. Our prior ruling, in which we held that the officers' damages claims against Assistant State's Attorney Doory were barred by qualified immunity, is reported at 14 F.3d 993 (4th Cir.1994).

3. Our disposition of this issue obviates the need to construe the Maryland Law Enforcement Officers' Bill of Rights, Md. Ann.Code art. 27, §§ 727–734D (1992). Our holding also disposes

of Appellants' pendent state-law theory that the compelled polygraph tests violated Article 22 of the Maryland Declaration of Rights. See Richardson v. State, 285 Md. 261, 265, 401 A.2d 1021, 1023–24 (1979) (Article 22 construed in pari materia with the Fifth Amendment's Self–Incrimination Clause).

4. The Court found no impediment to standing with respect to the plaintiff's claim for damages. 461 U.S. at 109, 103 S.Ct. at 1669.

of the local Fraternal Order of Police will, in the future, be affected by this policy. Accordingly, we find no standing problem here. *See Ward v. Portland,* 857 F.2d 1373, 1377 (9th Cir.1988); *see generally Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 342–43, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (discussing the "prerequisites for 'associational standing' ").

### III

As noted above, the complaint alleges that the Baltimore City Police Department maintains a policy of compelling officers to take polygraph examinations. The Mayor and City Council of Baltimore, appellees here, argue that they cannot be held liable for this policy because the Department is formally an agency of the State of Maryland, and in fact is legally insulated from the jurisdiction of City officials. *See* Baltimore City Code § 16–2 (1980); Charter of Baltimore City art. II, § 27 (1964); *see also* Lewis, *The Baltimore Police Case of 1860,* 26 Md.L.Rev. 215 (1966) (discussing origins of this arrangement). Appellees further argue that the City is not responsible for the policies of an agency over which it has no statutory control. *See Monell v. Department of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) (local governments subject to § 1983 liability when "action pursuant to official municipal policy of some nature caused a constitutional tort").

The United States District Court for the District of Maryland has twice rejected this contention, emphasizing the strong practical links between the City and the Department, and also pointing out that the Mayor, by law, appoints the Police Commissioner. *See Hector v. Weglein,* 558 F.Supp. 194, 197–99 (1982); *Wilcher v. Curley,* 519 F.Supp. 1, 3–4 (1980). The Maryland Court of Appeals, acknowledging these decisions, has noted that "under 42 U.S.C. § 1983, ... the Baltimore City Police Department might well be regarded as a local government agency." *Clea v. Baltimore,* 312 Md. 662, 670 n. 5, 541 A.2d 1303, 1306–07 n. 5 (1988).

In this case, we decline to pass upon the merits of the City's argument. The court

below did not explore the question in any depth, and the record before us is almost entirely barren on the issue. Thus, we shall simply assume for purposes of this opinion that the City may be held accountable, in a § 1983 action, for the policies of the Baltimore City Police Department.[5]

### IV

■ We now turn to the merits. Because the district court dismissed the complaint for failure to state a claim, our review is *de novo. Schatz v. Rosenberg,* 943 F.2d 485, 489 (4th Cir.1991), *cert.denied,* 503 U.S. 936, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992).

As noted in our prior opinion, the Supreme Court has decided three relevant cases involving the Fifth Amendment rights of public employees: *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967); *Gardner v. Broderick,* 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968); and *Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation,* 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968). In *Garrity,* the first case in the sequence, police officers were compelled, under threat of termination, to answer questions regarding allegations that they were involved in "fixing" traffic tickets. 385 U.S. at 494, 87 S.Ct. at 617. The Court held that the officers' statements, "obtained under threat of removal from office," could not be used against them in subsequent criminal proceedings. *Id.* at 500, 87 S.Ct. at 620; *see also Lefkowitz v. Cunningham,* 431 U.S. 801, 805, 97 S.Ct. 2132, 2135, 53 L.Ed.2d 1 (1977).

In *Gardner* and *Uniformed Sanitation Men,* the Court faced a somewhat different scenario. There, public employees were interrogated about alleged misconduct on the job; when they refused to surrender the protections of the Fifth Amendment, they were fired. *Gardner,* 392 U.S. at 274–75, 88 S.Ct. at 1914; *Uniformed Sanitation Men,* 392 U.S. at 281–82.[6] The Court held that the employees could not constitutionally be given the "Hobson's choice between self-incrimina-

---

**5.** We note that the Supreme Court recently heard argument in a case presenting a similar issue. *See Swint v. Chambers County Comm'n,* —— U.S. ——, 114 S.Ct. 2671, 129 L.Ed.2d 808 (1994)

(granting certiorari). In light of our disposition, *Swint* has no effect here.

**6.** Gardner and some of the workers in *Uniformed Sanitation Men* expressly refused to waive their

tion and forfeiting [their] means of livelihood." *Gardner,* 392 U.S. at 277, 88 S.Ct. at 1916. Accordingly, it ordered that the employees be reinstated.

The Court was careful, however, to preserve the right of a public employer to question an employee about matters relating to the employee's job performance. In *Gardner,* the Court noted that the constitutional violation arose not when the employer compelled the employee to answer job-related questions, but when the employee was required to waive his privilege against self-incrimination. *Id.* at 278, 88 S.Ct. at 1916. According to the Court's opinion, there would have been no constitutional violation if the employee had been forced to answer "questions specifically, directly, and narrowly relating to the performance of his official duties, without being required to waive his immunity with respect to the use of his answers or the fruits thereof." *Id.* (footnote omitted); *see also Lefkowitz,* 431 U.S. at 806, 97 S.Ct. at 2136; *Uniformed Sanitation Men,* 392 U.S. at 284, 88 S.Ct. at 1919–20. This language strongly indicates that forcing a public employee to answer potentially incriminating job-related questions does not implicate the Fifth Amendment unless the employee is also compelled to waive his privilege. *See Taylor v. Best,* 746 F.2d 220, 224–25 (4th Cir.1984), *cert. denied,* 474 U.S. 982, 106 S.Ct. 388, 88 L.Ed.2d 340 (1985).

Decisions from the Fifth and Eleventh Circuits are in accord with this view. In *Hester v. Milledgeville,* 777 F.2d 1492 (11th Cir. 1985), the court upheld a city's authority to require fire fighters to undergo polygraph examinations intended to ferret out illegal drug use, so long as the employees were not compelled to waive their Fifth Amendment rights. *See also Gulden v. McCorkle,* 680 F.2d 1070, 1074 (5th Cir.1982), *cert. denied,* 459 U.S. 1206, 103 S.Ct. 1194, 75 L.Ed.2d 439

(1983) ("it is the compelled answer *in combination with* the compelled waiver of immunity that creates the Hobson's choice for the employee") (emphasis in original).

■■■ Here, the officers were never asked to waive their constitutional privilege against self-incrimination, and the questions posed to them were narrowly job-related. In light of the foregoing authorities, we conclude that the officers have failed to allege facts that constitute a Fifth Amendment violation.

The officers attempt to avoid this conclusion by arguing that the presence of a criminal investigation in this case is constitutionally significant. We disagree. *Gardner* itself, which involved a police officer's testimony before a grand jury, indicates that the state may compel job-related testimony from an employee in the course of a criminal investigation, provided, of course, that the state does not make direct or derivative use of the employee's statement against the employee in any criminal proceeding. *See Gardner,* 392 U.S. at 278, 88 S.Ct. at 1916; *see also Garrity,* 385 U.S. at 500, 87 S.Ct. at 620; *see generally Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) (discussing relationship between immunity and privilege against self-incrimination).[7]

The officers also argue that their Fifth Amendment rights were violated at the time their statements were obtained, despite the fact that the information was never used against them in a criminal proceeding. In our prior opinion in *Doory,* we discussed the argument that use in a criminal proceeding is required before a Fifth Amendment violation occurs. *See* 14 F.3d at 998 & n. 11. Our decision, however, was limited to whether the relevant body of law was "clearly established" for qualified immunity purposes.

We recognize that, in cases involving private citizens, there is some inconsistency in

---

privilege. Although the other workers in *Uniformed Sanitation Men* merely invoked the privilege, this was tantamount to refusing to waive their protections since *Garrity* had not yet been decided. *See* 392 U.S. at 284, 88 S.Ct. at 1919–20.

**7.** The *Garrity* immunity is self-executing. *See Hester,* 777 F.2d at 1496; *Gulden,* 680 F.2d at 1075–76. In an appropriate case, it might be

necessary to inform an employee about its nature and scope. *See Gulden,* 680 F.2d at 1075–76. Here, however, the need for an explanation did not ripen because no officer attempted to invoke his Fifth Amendment rights during the polygraph tests. *Cf. United States v. Devitt,* 499 F.2d 135, 141 (7th Cir.1974), *cert. denied,* 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466 (1975) (*Garrity* protection must be explained before "disciplinary action [may] be taken against the witness for his refusal to testify").

**778**

the circuits regarding whether or not a Fifth Amendment violation can occur when the fruits of coerced questioning are not used. *Compare e.g., Cooper v. Dupnik,* 963 F.2d 1220 (9th Cir.) (en banc) (use not required), *cert. denied,* —— U.S. ——, 113 S.Ct. 407, 121 L.Ed.2d 332 (1992), *with Weaver v. Brenner,* 40 F.3d 527, 535 (2d Cir.1994) (evidence must be used "at any criminal proceeding"). But those cases are distinguishable because they involve private citizens who may claim a generalized right to be free from compelled interrogation by the government. Appellants, by contrast, are public officials. As such, they can make no tenable claim that a Fifth Amendment violation occurred when the Police Department merely exercised its legitimate right, as an employer, to question them about matters narrowly relating to their job performance. Of course, if the state had attempted to make direct or derivative use of the officers' statements against them, *Garrity*'s self-executing immunity would have immediately attached. On the facts alleged here, however, we hold that no constitutional violation occurred.

## V

For the reasons stated, the judgment of the district court is

*AFFIRMED.*