*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0420P (6th Cir.)
File Name: 02a0420p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

JAMES LINGLER and JEFFREY
GEZYMALLA,

      *Plaintiffs-Appellants,*

      *v.*

JOHN R. FECHKO,

      *Defendant-Appellee.*

No. 01-3554

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 00-00476—Donald C. Nugent, District Judge.

Argued: October 30, 2002

Decided and Filed: December 10, 2002

Before: MARTIN, Chief Circuit Judge; NELSON and
GILMAN, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Paul W. Flowers, LAW OFFICE OF PAUL W.
FLOWERS, Cleveland, Ohio, for Appellants. Nick Tomino,
TOMINO & LATCHNEY, LLC, Medina, Ohio, for Appellee.
**ON BRIEF:** Paul W. Flowers, LAW OFFICE OF PAUL W.
FLOWERS, Cleveland, Ohio, W. Craig Bashein, LAW

1

OFFICES OF R. WILLIAM BASHEIN, Cleveland, Ohio, for Appellants.  Nick Tomino, TOMINO & LATCHNEY, LLC, Medina, Ohio, for Appellee.

————————————

## OPINION

————————————

DAVID A. NELSON, Circuit Judge.  The issue in this appeal is whether it was unconstitutional, under the Fifth Amendment, for a police chief to exact statements from subordinate officers about on-the-job activities in which the officers may have broken the law.  The district court held that the exaction of such statements did not violate the Fifth Amendment where there was no evidence that the officers had been required to waive their privilege against self-incrimination and the statements had not been used against them in criminal proceedings.  We agree with the district court's holding, which is consistent with the caselaw in other circuits, and we shall affirm the judgment entered in favor of the  police chief.

I

On what must have been a slow day for crime in Seven Hills, Ohio, police officers James Lingler and Jeffrey Gezymalla, the plaintiffs in this civil rights action, decided to tidy up the station house.  In the course of their housekeeping efforts the officers removed an old couch and some dilapidated chairs from a training room.  The furniture was placed in a dumpster behind the building.

The chief of police, defendant John R. Fechko, had not authorized any such property disposal.  When he found that the furniture was not in its usual place, he ordered a "full investigation."  Suspicion soon fell on Officers Lingler and Gezymalla, whose daily activity logs made reference to "station cleanup."

public employees.  *Wiley*, 48 F.3d at 778.  Plaintiffs who wear the uniforms of police officers "can make no tenable claim that a Fifth Amendment violation occurred when the Police Department merely exercised its legitimate right, as an employer, to question them about matters narrowly relating to their job performance."  *Id*.

**AFFIRMED**.

not implicate the Fifth Amendment unless the employee is also compelled to waive his privilege." *Wiley*, *id.*

No waiver of the privilege having been compelled in *Wiley*, Justice Powell's opinion declared that no constitutional violation had occurred in that case. *Id.* at 778. On the facts presented in the case at bar, we are satisfied that no constitutional violation occurred here either.

Although there is no evidence here that Chief Fechko required Officers Lingler and Gezymalla to waive their privilege against self-incrimination, the officers contend that a waiver of the privilege is implicit in any statement given by a public employee under threat of disciplinary action. The caselaw does not support this contention – and *Garrity*, to repeat, teaches that any such waiver would have been ineffective.

In the Ninth Circuit, we acknowledge, the inadmissibility of such statements in criminal proceedings would not be considered material to the analysis. See *Cooper v. Dupnik*, 963 F.2d 1220, 1238-44 (9th Cir.) (*en banc*), *cert. denied*, 506 U.S. 953 (1992) (holding that an exaction of incriminating statements from a member of the public in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), was actionable under § 1983 and the Fifth Amendment despite the fact that the statements were not used against the declarant in any criminal case). Other circuits would almost certainly disagree. See, *e.g.*, *Guiffre v. Bissell*, 31 F.3d 1241, 1256 (3d Cir. 1994), where a Third Circuit panel observed that "[t]he dissenting judges in *Cooper* presented a persuasive argument that the Fifth Amendment privilege against self incrimination is not violated until evidence is admitted in a criminal case."

Whether the holding of the Ninth Circuit in *Cooper* was right or wrong, *Cooper* does not undermine the judgment rendered by the district court in the case at bar. There is an important distinction, as Justice Powell explained in *Wiley*, between plaintiffs not on the public payroll – "private citizens who may claim a generalized right to be free from compelled interrogation by the government" – and plaintiffs who are

Chief Fechko called Officer Gezymalla into his office and asked him to explain the  log entry. The officer detailed his efforts to clean up the station house, including the discarding of the old furniture. Whether in earnest or in an attempt to "impress upon Officer Gezymalla the gravity of his actions," Chief Fechko observed that the disposal of the furniture could be considered theft of city property. In this connection the chief spoke of reading the officer his rights.

Chief Fechko next met with Officer Lingler, who responded in the negative to a question about knowledge of "possible theft, missing city property." When asked about the "station cleanup" entry on his activity log, Officer Lingler replied "oh, you mean the junk furniture." During this interview Officer Lingler said he wanted to have an attorney present if the investigation were criminal in nature.

Following these meetings, Chief Fechko ordered the officers to prepare detailed written statements concerning the station cleanup. The officers objected, and Officer Lingler again stated that he wanted a lawyer. Chief Fechko said that the matter was not criminal, and he ordered the men to turn in their statements by the end of their work shift.

The officers did so, producing statements that described the cleanup efforts generally but made no reference to the furniture. Because of what he viewed as a failure to comply with his order, the chief then initiated disciplinary proceedings against the officers. After consulting counsel, the officers submitted statements with detailed accounts of the station house cleanup and the removal of the furniture. At no stage, as far as the record discloses, was either officer required to waive his constitutional privilege against self-incrimination.

Although Chief Fechko recommended that the mayor suspend the officers for 30 days, no punishment of any kind was imposed. We are told that the chief also recommended the initiation of criminal proceedings, but that this recommendation was rejected as well. The officers were never prosecuted.

In due course the officers sued the chief in an Ohio court. The complaint asserted a claim under 42 U.S.C. § 1983 for violation of the constitutional privilege against self-incrimination and a common law claim for intentional infliction of severe emotional distress. The case was removed to the United States District Court for the Northern District of Ohio, where the chief moved for summary judgment. The district court granted the motion as to the constitutional claim and dismissed the common law claim without prejudice. A final judgment thus having been entered, the officers perfected the present appeal.

## II

To prevail on their first claim the officers would have to prove that the chief, while acting under color of state law, subjected them to the deprivation of a right secured by the Constitution or laws of the United States. See 42 U.S.C. § 1983. The right of which the officers contend they were deprived is one arising from the Fifth Amendment prohibition (made applicable to the states by the Fourteenth Amendment) against any person being "compelled in any criminal case to be a witness against himself." We agree with the district court that the chief did not violate this right.

By its terms, the Fifth Amendment does not prohibit the act of compelling a self-incriminating statement other than for use in a criminal case. See *Deshawn E. v. Safir*, 156 F.3d 340, 346-47 (2d Cir. 1998) ("Even if it can be shown that a statement was obtained by coercion, there can be no Fifth Amendment violation until that statement is introduced against the defendant in a criminal proceeding"); *Mahoney v. Kesery*, 976 F.2d 1054, 1061-62 (7th Cir. 1992) (quoting *Wilkins v. May*, 872 F.2d 190, 194 (7th Cir. 1989), to the effect that "the Fifth Amendment does not forbid the forcible extraction of information but only the use of information so extracted as evidence in a criminal case . . .").

The statements given by Officers Lingler and Gezymalla were not used against them in any criminal case. Indeed, under *Garrity v. New Jersey*, 385 U.S. 493 (1967), the

statements could not have been so used. See *Garrity*, 385 U.S. at 500 (holding that the constitutional protection against coerced statements "prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office, and . . . it extends to all, whether they are policemen or other members of our body politic").

Officers Lingler and Gezymalla argue that the court of appeals decisions in *Deshawn v. Safir*, *Mahoney v. Kesery*, and cases like them (see, *e.g., Riley v. Dorton*, 115 F.3d 1159 (4th Cir. 1997) (*en banc*), and *Davis v. City of Charleston, Mo.*, 827 F.2d 317 (8th Cir. 1987)) cannot be reconciled with the Supreme Court decisions in *Garrity*, *Gardner v. Broderick*, 392 U.S. 273 (1968), and *Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation*, 392 U.S. 280 (1968), a trilogy standing for the proposition that a governmental body may not require an employee to waive his privilege against self-incrimination as a condition to keeping his job. The officers stress that in *Gardner* and *Sanitation Men*, the last two cases of the trilogy, the employees prevailed on their constitutional claims even though no criminal proceedings were ever instituted against them.

As retired Supreme Court Justice Lewis Powell pointed out in *Wiley v. Mayor of Baltimore*, 48 F.3d 773 (4th Cir.), *cert. denied*, 516 U.S. 824 (1995), however, the Supreme Court "was careful . . . to preserve the right of a public employer to question an employee about matters relating to the employee's job performance." *Id*. at 777 (citing *Gardner*, 392 U.S. at 278). "According to the Court's opinion," Justice Powell continued, "there would have been no constitutional violation if the employee had been forced to answer 'questions specifically, directly, and narrowly relating to the performance of his official duties, *without being required waive his immunity with respect to the use of his answers or the fruits thereof*.'" *Id.* (quoting *Gardner,* 372 U.S. at 278 (emphasis added)). "This language strongly indicates," according to Justice Powell, "that forcing a public employee to answer potentially incriminating job-related questions does